**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**HARRISONBURG DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Criminal Action No. 5:11cr00031** |
| **v.** | ) | |
| | ) | **By: Michael F. Urbanski** |
| **ANJAY PATEL, et al.,** | ) | **United States District Judge** |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION**

Before the court is defendant Anjay Patel's **Amended Motion to Modify the Government's Pretrial Protective Order (Dkt. # 334)**, in which Patel seeks to modify the standing pretrial protective order (Dkt. # 27) in this matter to release sufficient substitute assets to pay his legal fees. To this end, Patel requests that the court conduct a hearing to determine which assets covered by the protective order are improperly restrained and should be released. The government opposes the motion and asserts that the assets referenced in the protective order are all properly restrained as forfeitable assets, so Patel cannot use any of the assets to pay his legal fees. The court heard oral argument on May 22, 2012, and supplemental briefing was provided. For the reasons stated below, Patel's request for a hearing is granted, and his request to modify the protective order in this matter is taken under advisement pending such hearing.

**I**

This case involves a 180-count Indictment (Dkt. #s 3 and 87) against ten defendants, charging numerous violations of the Contraband Cigarette Tax Act, various money laundering violations, and conspiracy to commit the same. The Indictment includes a Notice of Forfeiture, in which the government alleges certain property of defendants to be forfeitable under various

civil and criminal forfeiture statutes, including 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982(a)(1), 28 U.S.C. § 2461, and 49 U.S.C. § 80303. The Notice of Forfeiture identifies various assets to be forfeited, including a $20.9 million money judgment, several business entities, bank accounts and identified real and personal property. The Notice of Forfeiture also identifies other assets that are forfeitable as substitute assets. On October 26, 2011, the court issued a protective order to preserve the status quo and prevent defendants and others from alienating, encumbering, or wasting forfeitable property and substitute assets.[1] The protective order restrains a large portion of Patel's property, including bank accounts, businesses, vehicles, and real property, and enjoins him from conducting any transactions that would affect the marketability, value, or availability of those assets for forfeiture. As a result, Patel asserts that he has been rendered indigent and unable to afford his current counsel of choice. Patel seeks to modify the protective order to release sufficient substitute assets to pay his legal fees. The government opposes this request, arguing that all of the assets referenced in the protective order are properly restrained as forfeitable assets, so Patel cannot use the assets to pay his legal fees.

**II**

In support of his motion to modify the protective order, Patel argues that, pursuant to United States v. Farmer, 274 F.3d 800 (4th Cir. 2001), when the pretrial restraint of substitute assets has rendered a defendant, such as Patel, indigent and unable to pay for his counsel of choice, the court may liberate substitute assets to pay for legal fees in order to protect the defendant's Sixth Amendment right to counsel. Furthermore, pursuant to Farmer, Patel argues that when a pretrial protective order restrains such "wholly legitimate" and "untainted" assets, assets not involved in the offense, that could be used to pay counsel, due process requires that the court conduct a pretrial, adversary hearing on whether to modify the protective order and liberate

[1] Various amended protective orders have been issued as well. See Dkt. #s 221, 222, and 223.

these assets to pay legal fees. Because the protective order in this matter restrains "untainted" substitute assets that were not involved in the instant offenses and Patel has been rendered indigent by such restraint, Patel argues that he is entitled to a Farmer hearing. Accordingly, Patel requests that the court conduct such a hearing to determine whether Patel's substitute assets included in the protective order should be released to him to pay his legal fees.

The government opposes the motion, arguing that Patel does not have a right to the pretrial release of restrained assets because all of the assets covered by the protective order are properly forfeitable either directly or as substitute assets, whether or not they are "tainted" by the instant offenses. Accordingly, the government has the authority to restrain these assets pretrial in order to ensure their availability for post-conviction criminal forfeiture proceedings. While recognizing Patel's Sixth Amendment right to counsel of his choosing, the government asserts that he does not have a constitutional right to use property subject to forfeiture to pay for counsel of his choice. The government asserts that Patel is not entitled to a Farmer hearing because, even if indigent, he cannot demonstrate the absence of probable cause to restrain his substitute assets. Simply put, the position of the government is that because the sum total of Patel's assets is less than the $20.9 million money judgment sought, all of Patel's assets are subject to forfeiture and may not be released. Given the size of the money judgment, the government asserts that all of the assets listed in the protective order are properly subject to forfeiture and pretrial restraint, regardless of whether they are directly forfeitable as "tainted" assets or forfeitable as substitute assets.

The conflicting legal positions asserted by Patel and the government regarding the nature and extent of the pretrial release of restrained assets to pay for legal counsel resemble ships passing in the night, Patel arguing that he has a Sixth Amendment right to use untainted

substitute assets to fund his defense, while the government contends that no forfeitable asset, tainted or substitute, may be released to pay Patel's lawyers. Boiled down, Patel argues that his Sixth Amendment right to counsel trumps the government's pretrial forfeiture of untainted, substitute assets. For its part, the government asserts that no asset subject to forfeiture, including tainted assets substantially connected to the offense and untainted substitute assets, may be released to Patel to pay his lawyers.

## III

The government seeks both civil and criminal forfeiture in this case pursuant to § 981(a)(1)(c), § 982(a)(1), and § 2461.[2] Under paragraph 1.A. of the Notice of Forfeiture, the government seeks civil forfeiture pursuant to § 981(a)(1)(c) and § 2461 of "any property constituting, or derived from, proceeds obtained directly or indirectly from the commission of the scheme to defraud for which the defendant is convicted. . . ." Paragraph 1.C. of the Notice of Forfeiture seeks criminal forfeiture pursuant to § 982(a)(1) of "any property, real or personal, involved in a violation of 18 U.S.C. §§ 1956 and/or 1957, or any property traceable to such property. . . ."

If identified forfeitable property is unavailable for a reason meeting the requirements of 21 U.S.C. § 853(p)(1)(A)-(E), the United States may seek the forfeiture of "substitute property." Substitute property is "any other property of the defendant," 21 U.S.C. § 853(p)(2), up to the "value of the property that would otherwise be subject to forfeiture." See United States v. Oregon, 671 F.3d 484, 487 (4th Cir. 2012). Under § 853(p), substitute assets are subject to forfeiture if directly forfeitable property (1) "cannot be located upon the exercise of due diligence;" (2) "has been transferred or sold to, or deposited with, a third party;" (3) "has been

[2] The government also seeks forfeiture of conveyances in paragraph 1.B. of the Notice of Forfeiture pursuant to 49 U.S.C. § 80303 and § 2461, but this forfeiture is not central to the issue facing the court at this time.

placed beyond the jurisdiction of the court;" (4) "has been substantially diminished in value;" or (5) "has been commingled with other property which cannot be divided without difficulty." 21 U.S.C. § 853(p)(1). Because criminal forfeiture is remedial in nature, § 853 explicitly states that its provisions "shall be liberally construed" in order to effectuate this purpose. 21 U.S.C. § 853(o).

Determining the forfeitability of specific property depends on "whether the government has established the requisite nexus between the property and the offense."[3] Fed. R. Crim. P. 32.2(b)(1)(A). Because "forfeiture constitutes an aspect of the sentence imposed [on a defendant] and not a substantive element of an offense, . . . the [g]overnment must establish this nexus by a preponderance of the evidence," United States v. Neal, No. 03-35-A, 2003 WL 24307070, at *2 (E.D. Va. Sept. 29, 2003) (citing Libretti v. United States, 516 U.S. 29, 39 (1995), and United States v. Tanner, 61 F.3d 231, 235 (4th Cir. 1995)), and it may rely on circumstantial evidence to meet this burden of proof. United States v. Herder, 594 F.3d 352, 364 (4th Cir. 2010), cert. denied, 130 S. Ct. 3440 (2010).[4] If the government meets its burden of proof and establishes the requisite nexus between the property and the offense, such that the

[3] Rule 32.2 states that "[t]he court's determination [regarding the requisite nexus between the property and the offense] may be based on evidence already in the record, including any written plea agreement, and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable." FED. R. CRIM. P. 32.2(b)(1)(B). If forfeiture is contested, then the court must conduct a hearing "after the verdict or finding of guilty" if either party so requests. Id.

[4] If the government seeks forfeiture under § 853 based on the theory that the property constitutes proceeds of the convicted offense, then it must satisfy a "but for" test in order to establish the requisite nexus under Rule 32.2. United States v. Bailey, No. 1:11-10, 2012 WL 569744, at *9 (W.D.N.C. Feb. 22, 2012). This "but for" test requires the government to prove that the defendant "'would not have [the property] but for the criminal offense.'" Id. (quoting United States v. Nicolo, 597 F. Supp. 2d 342, 346 (W.D.N.Y. 2009)), aff'd, No. 09-0732, 09-0821, 09-0867, 09-0847, 421 F. App'x 57, 2011 WL 1667085 (2d Cir. May 4, 2011). If the government seeks forfeiture under § 853 based on the theory that the property was used to commit, or facilitate the commission of, the convicted offense, then it must satisfy a "substantial connection" test in order to establish the requisite nexus under Rule 32.2. United States v. Herder, 594 F.3d 352, 364 (4th Cir. 2010); Bailey, 2012 WL 569744 at *9. Under the "substantial connection" test, "the government must establish that there was a substantial connection between the property forfeited and the offense," which can be done by "showing that use of the property made 'the prohibited conduct less difficult or more or less free from obstruction or hindrance.'" Herder, 594 F.3d at 364 (quoting United States v. Schifferli, 895 F.2d 987, 990 (4th Cir. 1990)) (internal quotations omitted).

property is subject to forfeiture, then the court "must promptly enter a preliminary order of forfeiture setting forth the amount of any money judgment, directing the forfeiture of specific property, and directing the forfeiture of any substitute property if the government has met the statutory criteria" provided in § 853 and described above. Fed. R. Crim. P. 32.2(b)(2)(A). To protect forfeitable property, the government can request that the court "enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of [forfeitable] property . . . ." 21 U.S.C. § 853(e)(1). This request can be made before or after the filing of an indictment or information. Id.

The government's right to the forfeiture of specific property and substitute assets, as well as to the pretrial restraint of this property and these assets, can conflict with a defendant's Sixth Amendment right to counsel.[5] In Caplin & Drysdale, Chartered v. United States, 491 U.S. 617 (1989), following the defendant's guilty plea to drug and distribution charges, the district court ordered the forfeiture of specific property as proceeds of the offenses. Id. at 619-21. The defendant sought the release of some of the forfeited assets in order to pay his legal fees, and the district court granted his request. Id. at 621. On appeal, the Fourth Circuit Court of Appeals reversed the district court and the United States Supreme Court affirmed this reversal, holding that the forfeiture provisions of § 853 do not violate the Sixth Amendment because nothing in the statute "prevents a defendant from hiring the attorney of his choice, or disqualifies an attorney from serving as a defendant's counsel." Id. at 625. "A defendant has no Sixth Amendment right to spend another person's money for services rendered by an attorney, even if those funds are the

[5] The United States Supreme Court has held that the Sixth Amendment provides that criminal defendants shall enjoy the right to the assistance of counsel, and if a defendant does not require appointed counsel, he has the right "to choose who will represent him." United States v. Gonzalez-Lopez, 548 U.S. 140, 144 (2006). However, "the right to counsel of choice 'is circumscribed in several important respects.'" Id. (quoting Wheat v. United States, 486 U.S. 153, 159 (1988)). For example, "'the Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds.'" Id. (quoting Caplin & Drysdale v. United States, 491 U.S. 617, 624-25 (1989)).

only way that that defendant will be able to retain the attorney of his choice." Id. at 626. The Court noted that "there is a strong governmental interest in obtaining full recovery of all forfeitable assets, an interest that overrides any Sixth Amendment interest in permitting criminals to use assets adjudged forfeitable to pay for their defense." Id. at 631. Thus, the Court rejected the defendant's "claim of a Sixth Amendment right of criminal defendants to use assets that are the [g]overnment's–assets adjudged forfeitable, as [the defendant's] were–to pay attorneys' fees, merely because those assets are in [the defendant's] possession." Id. at 632.

In United States v. Monsanto, 491 U.S. 600 (1989), decided on the same day as Caplin & Drysdale, the government sought to forfeit specific property—a home, an apartment, and $35,000 in cash—as proceeds of drug-law violations, and the court issued a restraining order to freeze these assets pending trial. Id. at 602-04. The defendant moved to vacate the restraining order in order to use the frozen assets to retain an attorney, id. at 604, but the Supreme Court held that the criminal forfeiture and pretrial restraining order provisions under § 853 do not contain an exemption "for assets which a defendant wishes to use to retain an attorney." Id. at 614. The Court explained that "[i]n enacting § 853, Congress decided to give force to the old adage that 'crime does not pay.' We find no evidence that Congress intended to modify that nostrum to read, 'crime does not pay, except for attorney's fees.'" Id. While the Monsanto Court upheld the pretrial restraint of assets based on a "finding of probable cause to believe that the assets are forfeitable," the Court did not consider "whether the Due Process Clause requires a hearing before a pretrial restraining order can be imposed." Id. at 615.

The Fourth Circuit addressed this due process issue in Farmer. In that case, the defendant was indicted on charges of conspiracy to traffic in clothing bearing counterfeit trademarks, conspiracy to engage in unlawful financial transactions, trafficking in counterfeit clothing, and

money laundering. Farmer, 274 F.3d at 801. The indictment sought to forfeit, as instruments or proceeds of the offenses, specific property that had been seized during the execution of a search warrant at the defendant's residence and warehouses pursuant to civil forfeiture statutes two years before the indictment. Id. at 801-02. The defendant filed a motion for a pretrial, adversary hearing "to determine if a portion of the seized funds should be released so that he could pay defense costs," arguing that he had a "Sixth Amendment right to use his legitimate property to hire the attorney of his choice and that he had been deprived of that right without a meaningful opportunity to be heard in violation of the Due Process Clause." Id. at 802. The district court denied the defendant's request for a hearing, and the defendant appealed. Id. The Fourth Circuit referenced the holdings of Caplin & Drysdale and Monsanto but noted that those cases "expressly left open the issue of whether a defendant has a Fifth Amendment right to a pretrial hearing to determine whether some or all of the seized assets may properly be used to fund his criminal defense." Id. at 803. The Fourth Circuit held that because the defendant could make a "threshold showing of need to use wrongly seized assets to pay his attorneys," id. at 804, due process requires a hearing, at which the defendant will have the opportunity "to prove by a preponderance of the evidence that the government seized untainted assets without probable cause and that he needs those same assets to hire counsel." Id. at 805. The Fourth Circuit also held that, at the hearing, the government "may present evidence that [the defendant] has other substantial assets with which to hire attorneys and/or evidence of probable cause to believe that the seized assets are tainted and forfeitable." Id.

District courts within the Fourth Circuit have applied the standard announced in Farmer when determining whether to grant defendants' requests for a pretrial hearing for the release of restrained assets to pay for legal fees. In United States v. Varner, No. 5:05cr00025, 2005 WL

2206083 (W.D. Va. Sept. 9, 2008), a grand jury charged the defendant with money laundering, conspiracy to distribute methamphetamine, untaxed liquor violations, and firearms violations, and the indictment included a forfeiture count setting forth specific assets involved in the alleged offenses. Id. at *1. Following the indictment, the court ordered the pretrial restraint of these particular assets, and the defendant moved for a pretrial hearing to determine whether the government had "restrained non-forfeitable assets" that the defendant could use to retain counsel of his choice. Id. In support of his motion, defendant "filed an affidavit and tax records to establish his inability to retain counsel." Id. Citing Farmer, the court held that "[i]f a criminal defendant challenges the pre-trial, post-indictment restraint of assets and requests a pre-trial hearing, the court may grant a limited hearing, but only if the defendant makes the threshold showing that the defendant is completely unable to afford counsel without resort to the restrained assets." Id. (citing Farmer, 274 F.3d at 804-05). The court then denied the defendant's request for a Farmer hearing, finding that "the indictment establishes the probable cause that the particularly described assets are subject to forfeiture, and [the defendant] has failed to prove he is unable to afford counsel without resort to them." Id. at *2. The court specifically found that the defendant's submitted affidavit was "insufficient to discharge his burden to make a threshold showing that the . . . protective order effectively precludes him from hiring counsel . . . [because the] affidavit does not detail his assets and liabilities or provide a meaningful basis for the court to independently judge his assertion that he lacks the ability to retain counsel." Id.

The Varner court cited to an opinion issued earlier the same year concerning the pretrial restraint of substitute assets and a defendant's request for a Farmer hearing for the release of those assets. In United States v. Wingerter, 369 F. Supp. 2d 799 (E.D. Va. 2005), the defendant was charged with immigration fraud and conspiracy to commit the same, and the indictment

Case 5:11-cr-00031-MFU-RSB Document 388 Filed 08/22/12 Page 9 of 17 Pageid#: 3344

included a forfeiture count, reflecting the jury's probable cause finding that, upon the defendant's conviction for the offenses, at least $4.5 million would be "subject to forfeiture as proceeds of those offenses." Id. at 803. The indictment further provided "for forfeiture of any substitute property up to the value of the amount described, $4.5 million, in the event the tainted property subject to forfeiture cannot be located because of any act or omission of the defendants." Id. The court subsequently issued a pretrial restraining order to restrain property subject to forfeiture and substitute assets, and the defendant requested the release of his substitute assets to pay for counsel. Id. at 804. In particular, the defendant requested the release of substitute assets in the amount of $102,000, which represented funds he had received as an inheritance from his great aunt that were being held in a bank account owned by him. Id. The government did not dispute the source of the funds but instead argued "that because it ha[d] not been able to locate and restrain the entire $4.5 million sum forfeitable on conviction, the $102,000 [was] subject to pretrial restraint as substitute property." Id. (internal quotations omitted). In response, the defendant argued that "his inherited funds are not directly traceable to the alleged immigration fraud and thus should not be restrained because they are not 'tainted assets.'" Id. Relying in part on a prior opinion in the Racketeer Influenced and Corrupt Organizations Act ("RICO") context,[6] Billman v. United States, 915 F.2d 916 (1990),[7] the court

---

[6] The criminal forfeiture provisions under § 853 are "in nearly all respects identical to the RICO criminal forfeiture statute as amended . . . ." United States v. McHan, 345 F.3d 262, 267 (4th Cir. 2003). "The language of 21 U.S.C. § 853 closely tracks that at 18 U.S.C. 1963, and courts have often relied on one in interpreting the other." United States v. Najjar, 57 F. Supp. 2d 205, 208 n.2 (4th Cir. 1999) (citing United States v. McHan, 101 F.3d 1027, 1042 (4th Cir. 1996)); see also United States v. Bollin, 264 F.3d 391, 421-22 (4th Cir. 2001).

[7] Billman, a pre-Farmer case, involved the forfeiture and pretrial restraint, pursuant to RICO, of substitute assets that the defendant had transferred to a third-party. 915 F.2d at 917. The defendant requested that the district court determine the validity of this pretrial restraint, and the court held a hearing and ultimately vacated the temporary restraining order that was in place. Id. at 919. On appeal, the Fourth Circuit held that, pursuant to Caplin & Drysdale and Monsanto, "[t]he government may seize property based on a finding of probable cause to believe that the property will ultimately be proven forfeitable." Id. (internal quotations omitted). "The probable cause found by the grand jury satisfies the government's burden of proving the allegations [related to forfeiture] in the indictment." Id. Moreover, "restraint [of substitute assets] pending forfeiture can be imposed pretrial" and does not infringe on a defendant's Sixth Amendment right to counsel." Id. at 922.

held that, under the law of the Fourth Circuit, "the government may seek pretrial to restrain not only tainted assets, but substitute property as well."[8] Id. at 806. "It is well-settled that pretrial restraint of property, when there is probable cause to believe that it will be subject to forfeiture, does not violate a defendant's Sixth Amendment right to counsel, even if the restraint of these funds makes it impossible for him to pay and retain his chosen lawyer." Id. at 807.

While noting the government's authority to seize forfeitable assets pretrial, the Wingerter court also recognized a defendant's right under Farmer to request a hearing to challenge such a seizure, holding that if a defendant can make a threshold showing that he is "without funds to hire the attorney of his choice[,] . . . then he may request a hearing at which he will be required to prove 'by a preponderance of the evidence that the government seized [nonforfeitable] assets without probable cause.'" Id. at 808 (quoting Farmer, 274 F.3d at 804-05).[9] The court stated that, in the Fourth Circuit, "the key distinction for determining whether pretrial restraint of property violates a defendant's Sixth Amendment right is not whether the property is *tainted* or *untainted*, but rather whether it is *forfeitable* or *nonforfeitable*." Id. at 810 (emphasis in original). Thus, while the defendant "is entitled to challenge the government's conclusion that his inherited funds will be forfeitable as substitute assets if he is convicted, he must first establish that he is entitled to a Farmer hearing at which to do so." Id. The court then denied the defendant's request for a Farmer hearing because although he had provided unsworn statements in his pleadings regarding his financial situation, he had not "yet offered any formal proof in the

[8] The Wingerter court noted that "the Fourth Circuit has reasoned that § 853(e)(1), and the virtually identical forfeiture provision in the RICO context, must be construed broadly in conjunction with [their substitute asset provisions] to preserve the availability of all forfeitable assets pending trial, including substitute assets." 369 F. Supp. 2d at 806 (citing Billman, 915 F.2d at 920) (internal quotations omitted).

[9] The original quote from Farmer states that the defendant must prove "by a preponderance of the evidence that the government seized untainted assets without probable cause . . . ." 274 F.3d at 805.

form of properly admissible evidence that he is without funds to pay his lawyer. If [the defendant] can make this showing, he will be entitled to a Farmer hearing." Id. at 809.

In In re Restraint of Bowman Gaskins Financial Group, 345 F. Supp. 2d 613 (E.D. Va. 2004), the district court again addressed a defendant's right to a Farmer hearing to contest the pretrial, and pre-indictment, restraint of substitute assets. In that case, the government was conducting an "ongoing visa fraud, money laundering, and tax evasion investigation" of an individual and his company and sought to restrain funds that the company had paid to the individual's daughters "for the purpose of preserving these funds for future forfeiture." Bowman Gaskins, 345 F. Supp. 2d at 614. The individual and the company wanted to use the funds to "finance their defense in connection with the ongoing grand jury investigation," id. at 617, but the court held that there was probable cause to believe that the funds were the proceeds of the individual and company's illegal activities. Id. at 621, 624. Moreover, the funds could also be forfeited, and thus restrained, as substitute assets. Id. at 621. Relying in part on Billman, as did the court in Wingerter the following year, the court held that "it is well-settled in the Fourth Circuit that pretrial restraint of substitute assets is appropriate to preserve those assets for forfeiture if a conviction is ultimately entered." Id. at 621 n.18. This pretrial restraint of forfeitable assets that the individual and the company wanted to use to pay for counsel "does not abridge the Sixth Amendment right to counsel if there is a finding of probable cause to believe the funds will be subject to forfeiture upon conviction." Id. at 627 (citing Monsanto, 491 U.S. at 615). Importantly, though, the court then noted that the individual and the company were not prevented from seeking a Farmer hearing at some later date to show that they were entitled to use the funds to pay for their criminal defense if they could prove "'by a preponderance of the evidence that the government seized *untainted* assets without probable cause'" and that they

need "those same assets to hire counsel." Id. at 629 (quoting Farmer, 274 F.3d at 805) (emphasis in original). The court concluded that as long as the requisite threshold showing of necessity is met, the individual and the company are not precluded from requesting a Farmer hearing in the future. Id. at 629 n.36.

District courts within the Fourth Circuit have also addressed the pretrial restraint of substitute assets within the RICO context. In United States v. Najjar, 57 F. Supp. 2d 205 (D. Md. 1999), the grand jury indictment found that there was probable cause to believe that the defendant's real property ("the Brinkley Road property") was forfeitable pursuant to RICO, most likely as proceeds traceable to the defendant's alleged racketeering activities. Id. at 207. The government sought, and the court issued, a pretrial restraining order, and the defendant moved to modify the restraining order in order to pay his legal and living expenses with restrained assets. Id. at 206-07. The court held an adversarial hearing after the defendant met his initial burden, through an affidavit "stating that all of his assets are currently frozen," of demonstrating need for the restrained assets. Id. The court found that the grand jury was mistaken and that the Brinkley Road property was "untainted" by the defendant's alleged crimes and "only forfeitable as a substitute asset." Id. at 208. This distinction between tainted and substitute assets was important to the court. Id.

> While the court has no discretion to unfreeze assets forfeitable [as traceable assets], the same is not true of assets forfeitable [as substitute assets]. The Supreme Court [in Monsanto] has held that . . . § 853[]—and by implication [RICO]—requires a district court to restrain or otherwise secure traceable assets. While the Supreme Court made clear that traceable assets must be restrained, it left open the question of whether substitute assets must be similarly restrained.

Id. (internal citation omitted). The court also noted that the Fourth Circuit, through Billman, has held that RICO "should be construed to *authorize* pretrial restraint" of traceable and substitute assets "that can be forfeited after conviction," meaning that the restraint of substitute assets is not

required. Id. (emphasis in original). The court then distinguished Billman and held that it was inappropriate to restrain the defendant's untainted interest in the Brinkley Road property. Id. at 209. "In Billman, the [g]overnment sought to restrain the defendant's substitute assets because the defendant there had absconded overseas with the traceable assets." Id. Thus, when a defendant "affirmatively acts to evade the reach of the forfeiture laws, the Fourth Circuit concluded that [RICO] should be read broadly to counter those attempts." Id. In contrast, there was no evidence in Najjar that the defendant had attempted to evade forfeiture, so the court held it would be "inappropriate to restrain the untainted portion" of the defendant's interest in the Brinkley Road property. Id. The court stated that the defendant's "Sixth Amendment right to counsel is simply more important than the [g]overnment's interest in the untainted portion of [the d]efendant's substitute property." Id.; but see United States v. Alamoudi, 452 F.3d 310, 314 (4th Cir. 2006) ("Section 853(p) is not discretionary; rather, the statute mandates forfeiture of substitute assets when tainted property has been placed beyond the reach of a forfeiture. See United States v. McHan, 345 F.3d 262, 271 (4th Cir. 2003).").

**IV**

Regardless of whether the government's authority to restrain assets pretrial without violating the Sixth Amendment right to counsel is based on the tainted or untainted nature of the asset, or simply whether the asset is forfeitable or not under any theory, it is clear from the relevant Fourth Circuit case law that if Patel can make the requisite threshold showing of necessity, then due process requires that the court grant his request for a Farmer hearing, at which Patel will have the opportunity to prove by a preponderance of the evidence that the government has restrained his assets without probable cause and that he needs those same assets to hire counsel. At this hearing the government can also present evidence that Patel has

substantial assets with which to pay counsel and that the pretrial restraint of Patel's assets is supported by the requisite probable cause. In each of the cases cited above, regardless of whether the court determined the validity of the pretrial restraint of assets based on their tainted nature or their likely forfeitability in general, the courts recognized the due process right to a Farmer hearing if the defendant could make an initial showing of necessity as to the disputed assets to pay for counsel of his choice.

In this case, the court finds that Patel has met his burden of establishing the requisite threshold of necessity in order to necessitate a Farmer hearing in accordance with due process principles. Patel has submitted numerous affidavits, documents, bills, and checks, detailing his current financial situation and need for the restrained substitute assets in order to pay his counsel. See Dkt. # 367, Ex. 1-13. Patel also has submitted his fee agreement with counsel under seal. See Dkt. # 374. The documentation details Patel's monthly living expenses, the amount of money he has had to borrow from family and friends to cover his expenses and pay his legal fees, the delinquent bills he has outstanding that need to be paid, and the extent of his unrestrained property that could be used to cover his living expenses and pay his legal fees. This documentation goes beyond that submitted by the defendants in Varner and Wingerter and provides the court with formal proof of the details of Patel's assets and liabilities, which allows the court to make a meaningful, independent assessment of Patel's current inability to retain counsel without the use of restrained assets. Because the court finds that Patel has met his initial burden of establishing a need for the restrained assets in order to retain counsel of his choice under the Sixth Amendment, due process requires that he be given the opportunity to contest the government's pretrial restraint of those assets in a Farmer hearing. The parties are directed to contact the Clerk to schedule such a hearing.

At the Farmer hearing, Patel will have the burden of proving, by a preponderance of the evidence, that the government has restrained his assets without probable cause and that he needs those same assets to hire counsel. The government can also present evidence that Patel has substantial assets with which to pay counsel and that the pretrial restraint of Patel's assets is supported by the requisite probable cause. Other issues to be addressed at this hearing are as follows:

(1) the evidentiary basis for the claimed $20.9 million money judgment;

(2) the nexus between assets listed in numbered paragraph 2 of the Notice of Forfeiture ("the tainted assets") and the offenses charged;

(3) the relationship, if any, between the tainted assets and the $20.9 million money judgment;

(4) the value of the tainted assets;

(5) whether any of the elements of 21 U.S.C. § 853(p)(1)(A)-(E) have been met as regards the tainted assets;

(6) the value of the assets listed in numbered paragraph 3 of the Notice of Forfeiture ("the substitute assets");

(7) whether, and to what extent, the value of the substitute assets exceeds the value of the assets meeting the requirements of 21 U.S.C. § 853(p)(1)(A)-(E); and

(8) whether there is any evidence regarding violations by Patel, or others, of the standing protective order or efforts to dissipate the assets subject to forfeiture.

**V**

Accordingly, **IT IS ORDERED** that Patel's **Amended Motion to Modify the Government's Pretrial Protective Order (Dkt. # 334)** is **GRANTED** to the extent that his

request for a Farmer hearing is granted. The parties are directed to contact the Clerk to schedule a Farmer hearing, and Patel's request to modify the protective order in this matter is taken under advisement pending such hearing.

The Clerk is directed to send a copy of this Memorandum Opinion and accompanying Order to defendants and all counsel of record.

Entered: August 21, 2012

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge