CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 13 2018

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Action No. 5:11-CR-00031 |
| | ) | |
| v. | ) | |
| | ) | |
| ANJAY PATEL, | ) | By: Michael F. Urbanski |
| Petitioner. | ) | Chief United States District Judge |

## MEMORANDUM OPINION

Petitioner Anjay Patel filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 on two grounds. First, Patel claims the court's 2013 ruling denying release of forfeited substitute assets to pay his retained counsel is undone by the 2016 Supreme Court decision in Luis v. United States, 136 S. Ct. 1083 (2016). Second, Patel claims the government withheld discovery of an Office of Inspector General (OIG) Report in violation of the rule in Brady v. Maryland, 373 U.S. 83 (1963). ECF No. 871. The government moved to dismiss Patel's § 2255 motion on the basis of timeliness, ECF No. 877, and Patel responded, ECF No. 878.[1] On January 18, 2018, Patel's counsel write a letter providing more recent information concerning his Brady claim. ECF No. 893. For the reasons set forth in this opinion, the government's motion to dismiss will be granted as the petition, as pleaded, is untimely. However, as explained herein, Patel will be granted leave to amend his second claim to raise Brady violations, if any, beyond those he could have asserted based on the 2013 OIG Report.

I.

---

[1] In its motion to dismiss, the government moved to stay briefing on the merits of the underlying claims in Patel's § 2255 motion, pending the court's resolution of timeliness. ECF No. 877. The court granted the motion to stay the briefing schedule, and the government reserved its right to respond to Patel's § 2255 motion on the merits. ECF No. 880.

On October 6, 2011, a federal grand jury named Patel and others in an 180-count indictment charging violation of the Contraband Cigarette Trafficking Act ("CCTA"), various forms of money laundering, conspiracy to commit money laundering, conspiracy to traffic in contraband cigarettes, and trafficking in contraband cigarettes and counterfeit state tax stamps. The indictment followed a lengthy undercover sting operation conducted by agents from the Bureau of Alcohol, Tobacco, and Firearms ("ATF"), who sold untaxed cigarettes to the defendants. The notice of forfeiture attached to the indictment identified that certain of Patel's property was directly forfeitable under various criminal forfeiture statutes, including 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982(a)(1), 28 U.S.C. § 2461, and 49 U.S.C. § 8030. The government alleged the forfeitable assets included a $20.9 million money judgment, several business entities, bank accounts, and real and personal property. However, the government could not locate directly forfeitable assets of Patel sufficient to reach that figure, and therefore sought forfeiture of substitute assets pursuant to 21 U.S.C. § 853(p).

On October 26, 2011, the court issued several protective orders to prevent Patel from alienating, encumbering, or wasting forfeitable property and substitute assets. ECF Nos. 27, 221, 222, and 223. On May 11, 2012, Patel moved to modify the pretrial protective orders, asserting that the orders rendered him unable to fully pay his counsel of choice in violation of the Sixth Amendment. ECF No. 334. Patel requested modification of the protective orders to release sufficient substitute assets to pay his legal fees, as he was in arrears under his fee agreement with retained counsel.[2] In connection with this motion, Patel

---

[2] Counsel for Patel filed under seal a copy of the fee agreement, see ECF No. 374, and stated at a May 22, 2012 hearing that Patel had not fully satisfied his obligations under his fee agreement with counsel. Subsequently, the court ordered Patel's counsel to apprise the court as to the amount of fees Patel had paid to his lawyer. United States v. Patel, 949 F. Supp. 2d 642, 663 n. 20 (W.D.Va. 2013).

2

urged the court to conduct a hearing pursuant to United States v. Farmer, 274 F.3d 800 (4th Cir. 2001), which requires a pretrial hearing when "a defendant claims that a portion of the assets restrained pursuant to criminal forfeiture statutes are untainted and that he has no other funds from which to secure the counsel of his choice." Id. at 803-04.

The court held the Farmer hearing on October 16, 2012. After reviewing the evidence presented, the court denied Patel's motion to release his substitute assets in a memorandum opinion dated January 11, 2013. ECF No. 481. The court found that the government had demonstrated the existence of probable cause sufficient for the issuance of a protective order restraining up to $20.9 million in proceeds from contraband cigarette trafficking. Despite the exercise of due diligence, the government could not locate tainted assets of Patel's to reach that figure. Thus, after reviewing both civil and criminal forfeiture statutes, the court concluded that the government could seek forfeiture of Patel's substitute assets up to $20.9 million, pursuant to 21 U.S.C. § 853(p). The court concluded that Patel had paid counsel more than sufficient funds to defend his case, and that given the amount of paid fees, "there [was] no credible argument that Patel's Sixth Amendment rights [were] in danger of being infringed." United States v. Patel, 949 F.Supp.2d 642, 663 (W.D. Va. 2013).

On January 17, 2013, Patel filed a notice of interlocutory appeal in the United States Court of Appeals for the Fourth Circuit, appealing the court's decision denying modification of the pretrial protective orders. ECF No. 483.

On February 15, 2013, Patel and the government entered into a written plea agreement, in which Patel agreed to plead guilty to six counts: Count One charging him with conspiring to distribute contraband cigarettes, in violation of 18 U.S.C. § 371; Count Two

3

charging him with conspiring to commit money laundering, in violation of 18 U.S.C. § 1956(h); Count 56 charging him with trafficking in contraband cigarettes, in violation of 18 U.S.C. § 2342(a); Count 133 charging him with money laundering to promote distribution of contraband cigarettes, in violation of 18 U.S.C. § 1956(a)(1)(A)(i); Count 156 charging him with money laundering related to the proceeds from the sale of contraband cigarettes, in violation of 18 U.S.C. § 1956(a)(3)(A)-(B); and Count 169 charging him with engaging in a monetary transaction in criminally derived funds greater than $10,000, in violation of 18 U.S.C. § 1957. Plea Agree., ECF No. 492; see Judgment at 2-3, ECF No. 654.

After pleading guilty, Patel moved to withdraw his January 17, 2013 interlocutory appeal to the Fourth Circuit. On March 8, 2013, the Fourth Circuit dismissed Patel's appeal pursuant to Local Rule 42(b) of the Federal Rules of Appellate Procedure. United States v. Patel, No. 13-4045 (4th Cir. Mar. 8, 2013), op. at 1, ECF No. 502; see Fed. R. App. P. 42(b).

On August 29, 2013, a criminal judgment was entered sentencing Patel to 84 months of imprisonment followed by two years of supervised release. Judgment at 3-4, ECF No. 654. Patel did not file a direct appeal, and his judgment became final on September 28, 2013.

On March 30, 2017, Patel filed the present § 2255 motion seeking vacatur of his guilty plea and release of his substitute assets claiming retroactive application of Luis and recent discovery of the claimed Brady violation. In his first claim, Patel alleges the district court violated his Sixth Amendment right to counsel of choice by preserving the pretrial protective orders restraining Patel's substitute assets.

In his second claim, Patel asserts that the government violated Patel's constitutional due process rights under Brady v. Maryland, 373 U.S. 83 (1963), when it failed to disclose

4

that the Office of the Inspector General ("OIG") in the U.S. Department of Justice was engaged in an ongoing audit of the ATF's procedures and conduct during the investigation underlying Patel's charged criminal activity. Patel asserts that he requested discovery on ATF investigatory improprieties by letter July 31, 2012, ECF No. 871, Ex. C, but apart from an emailed request for further specificity, no discovery related to the OIG audit and report was produced.[3] Patel claims that he would not have entered a guilty plea had proper discovery been provided apprising him of the myriad ATF improprieties revealed in the OIG Report. The audit and investigatory field work, which predates Patel's guilty plea, led to the OIG publishing a report in September 2013 (the "OIG Report"), a month after Patel was sentenced. OIG Report, ECF No. 871, Ex. B. The OIG Report identified certain ATF misconduct, concluding that the ATF had failed to authorize several contraband cigarette investigations and comply with accounting procedures for seized assets. The September 16, 2013 ATF response to the OIG Report states that "[a]s early as March 2011, ATF recognized issues with the manner in which income-generating undercover operations were being conducted." ECF No. 871, Ex. B, Audit of the Bureau of Alcohol, Tobacco, Firearms and Explosives' Use of Income-Generating, Undercover Operations, App. II, at 54. Appendix 1 to the ATF's September 16, 2013 response to the OIG Report is entitled "Timeline of Churning Remedial Measures," and this chronology of agency activity makes clear that the ATF was aware of problems with its undercover tobacco operations and was

---

[3] While Patel's petition alleges that the government responded to his discovery inquiry by letter dated July 31, 2013, ECF No. 871, at 8, no such letter was attached to his petition. Patel responded to an inquiry from the court regarding the reference to this letter by stating that the reference reflected a typographical error and was intended to refer to defense counsel's letter of July 31, 2012. See ECF Nos. 897, 898. Nonetheless, Patel's counsel states that "[a]s far as current counsel is aware, the Government never responded or provided any further documentation to Patel's defense team." Letter, ECF No. 898, at 1.

5

taking steps to correct them in 2011 and 2012, when Patel's discovery requests were pending. Patel's discovery letter of July 31, 2012 sought specific information regarding inappropriate conduct by ATF agents in conducting these operations. ECF No. 871, Ex. C. Indeed, Patel claims that Operation Alpha highlighted in the OIG Report is the investigation refers to his case. Patel's petition alleges that that the OIG report was the subject of a September 25, 2013 Washington Post article. Sari Horwitz, *ATF lost track of 2.1 million cartons of cigarettes in sting operations, report finds,* WASH. POST, Sept. 25, 2013. ECF No. 871, at 3 n.2.

Since the filing of the present § 2255 motion, Patel's counsel sent a letter to the court on January 18, 2018, raising "recent developments and admissions from the Bureau of Alcohol, Tobacco and Firearms." ECF No. 893. In the letter, Patel's counsel asserts he has discovered new information regarding his Brady claim. Patel cites to articles published by the New York Times in 2017,[4] which he claims reveal improprieties beyond those contained in the OIG Report. Patel's counsel's letter focuses, as do the New York Times articles, on an ATF "management account" used to fund undercover operations associated with Big South, a tobacco warehouse in Bristol, Virginia. Counsel's letter refers to the ATF's use of this bank account and alleged dealings between Patel's co-conspirators and Big South, noting that the Bristol warehouse was expressly mentioned in Patel's indictment. Indictment, ECF No. 3, ¶¶ 36, 70. On February 16, 2018, the government responded to the letter, contending that it sets forth improper and untimely arguments. ECF No. 894.

II.

---

[4] Matt Apuzzo, *A.T.F. Filled Secret Bank Account with Millions from Shadowy Cigarette Sales,* N.Y. TIMES, Feb. 22, 2017; Matt Apuzzo, *'I Smell Cash': How the A.T.F. Spent Millions Unchecked,* N.Y. TIMES, Sept. 8, 2017.

6

To state a viable claim for relief under § 2255, a petitioner must prove: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States;" (2) that "the court was without jurisdiction to impose such a sentence;" or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Patel bears the burden of proving grounds for a collateral attack by a preponderance of the evidence. Jacobs v. United States, 350 F.2d 571, 574 (4th Cir. 1965).

A threshold issue for the court is whether Patel's § 2255 petition is timely. Under 28 U.S.C. § 2255(f)(1), a petitioner has one year from the date that his judgment of conviction becomes final to attack the corresponding sentence. Patel's criminal judgment, entered on August 29, 2013, became final on September 28, 2013. See Clay v. United States, 537 U.S. 522, 524-25 (2003) (stating a conviction becomes final once the availability of direct review is exhausted). Patel concedes that his § 2255 petition was not filed within one year of his conviction becoming final. Because Patel's judgment of conviction was final for more than three years before he filed this § 2255 petition, he must satisfy one of § 2255(f)'s other conditions for renewing the limitations period.

### III.

For his first claim, asserting violation of his Sixth Amendment right to counsel of choice, Patel relies on § 2255(f)(3), which allows the limitations period to begin on "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3). The § 2255(f)(3) limitation period runs from the date on which the Supreme Court recognizes the new right, not the date on which the new

7

right was "made retroactive[.]" Dodd v. United States, 545 U.S. 353, 357-60 (2005). "A petitioner who collaterally attacks his conviction must establish that the change applies retroactively." Miller v. United States, 735 F.3d 141, 145 (4th Cir. 2013).

Patel argues his claim was filed within one year of the Supreme Court's decision in Luis, which held that "the pretrial restraint of legitimate, untainted assets needed to retain counsel of choice violates the Sixth Amendment." 136 S. Ct. at 1088-1092. Specifically, Patel argues that the decision in Luis constitutes a new right that was initially recognized by the Supreme Court on March 30, 2016, making his § 2255 motion filed on March 30, 2017 timely.

### A.

The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right...to have the Assistance of counsel for his defence." U.S. Const. amend. VI. The Sixth Amendment grants a defendant the right to effective assistance of counsel, see, e.g., Buck v. Davis, 137 S. Ct. 759, 775 (2017), but also the "fair opportunity to secure counsel of [one's] own choice, Powell v. Alabama, 287 U.S. 45, 53 (1932). If a defendant does not require appointed counsel, he is guaranteed the right "to choose who will represent him." United States v. Gonzalez-Lopez, 548 U.S. 140, 144 (2006). A defendant's right to counsel of choice, however, is not absolute and "has limits." Luis, 136 S. Ct. at 1089. To be sure, "[a] defendant has no Sixth Amendment right to spend another person's money for services rendered by an attorney, even if those funds are the only way that the defendant will be able to retain the attorney of his choice." Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 626 (1989). Where funds are in the defendant's possession unlawfully, or "tainted,"

8

their Sixth Amendment right to choose counsel is not violated when those funds are seized. Id.

In Luis, the plurality held that the government's "pretrial restraint of legitimate, untainted assets needed to retain counsel of choice violates the Sixth Amendment." 136 S. Ct. at 1088. The defendant in Luis was charged with fraudulently obtaining approximately $45 million through crimes related to health care. The defendant spent nearly the entirety of the $45 million, rendering the tainted funds unavailable for forfeiture. The government therefore sought the pretrial restraint of $2 million in untainted assets remaining in the defendant's possession, which precluded her from being able to privately retain an attorney at all. See id. In analyzing whether the government's pretrial restraint of the defendant's untainted assets contravened the Sixth Amendment, the Supreme Court addressed the principles set forth in United States v. Monsanto, 491 U.S. 600, 616 (1989), and Caplin & Drysdale, 491 U.S. at 626, which respectively permitted the pretrial and post-conviction restraint of tainted assets under civil and criminal federal forfeiture statutes. Rejecting a broad reading of Caplin & Drysdale and Monsanto, the Supreme Court held that the nature of the assets at issue in Luis – untainted funds – differed importantly from the assets at issue in those earlier cases. Id. at 1085. Given the untainted assets at issue, the Supreme Court held that a defendant "has a Sixth Amendment right to use her own 'innocent' property to pay a reasonable fee for the assistance of counsel." Id. at 1096. Thus, when considering whether a restraint of assets violates a defendant's Sixth Amendment rights, Luis instructs that the nature of the assets controls. See id.

**B.**

The parties dispute whether the decision in Luis applies retroactively to Patel's conviction. Although Luis is instructive prospectively regarding pretrial restraint of untainted assets, the Supreme Court did not expressly state whether its ruling applied retroactively to cases on collateral review. Therefore, the court must determine whether the rule announced in Luis is new and whether it can be afforded retroactive application.

A new rule[5] applies retroactively only "when it breaks new ground or imposes a new obligation on the States or the Federal Government" or "if the result was not dictated by precedent existing at the time the defendant's conviction became final." Teague v. Lane, 489 U.S. 288, 301 (1989) (plurality opinion). However, "a case does *not* 'announce a new rule, [when] it [is] merely an application of the principle that governed' a prior decision to a different set of facts." Chaidez v. United States, 568 U.S. 342, 347-48 (2013) (quoting Teague, 489 U.S. at 307) (emphasis in original).

In Luis, it was undisputed that the defendant's restrained assets were untainted, or unconnected to the alleged crime, and that she was barred from using her untainted funds to "hire counsel to defend her in her criminal case." 136 S. Ct. at 1088. The government argues that the rule announced in Luis, that a defendant "has a Sixth Amendment right to use her own 'innocent' property to pay a reasonable fee for the assistance of counsel," Luis, 136 S. Ct. at 1096, is an old one representing a straightforward application of the Sixth Amendment

---

[5] Section 2255(f)(3) refers to a new "right," whereas the framework under Teague refers to a "new rule." Compare 28 U.S.C. § 2255(f)(3), with Teague v. Lane, 489 U.S. 288 (1989). While the Fourth Circuit has not explicitly resolved this issue, the language of § 2255(f)(3) directly implicates Teague, stating that the clause only applies "if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." See Teague, 489 U.S. at 292 (addressing the "retroactivity for cases on collateral review"). Moreover, it "seems unlikely that Congress meant to trigger the development of a new body of law that distinguishes rights that are 'newly recognized' from rights that are recognized in 'new rule' under established retroactivity jurisprudence." Headbird v. United States, 813 F. 3d 1092, 1095 (8th Cir. 2016). Thus, a right under § 2255(f)(3) must be analogous to a "new rule" under Teague.

to a new factual setting not addressed in Caplin & Drysdale and Monsanto. The Caplin & Drysdale and Monsanto decisions discussed whether restraining "tainted" assets was proper in light of the Sixth Amendment right to choose counsel, while the Luis Court considered how those same constitutional protections applied to a case involving "untainted" assets. See Luis, 136 S. Ct. at 1088-89.

On these grounds, a number of courts have denied retroactive application to Luis.

> The Supreme Court's opinion in Luis was based primarily on the application of two existing cases: Caplin & Drysdale, Chartered v. United States, 491 U.S. 617 (1989) and U.S. v. Monsanto, 491 U.S. 600 (1989). For this reason, courts have consistently held that Luis is not retroactively applicable on review. See Thaw v. United States, 2016 WL 4623053 (N.D. Tex., Aug. 16, 2016) (unpublished); Noel v. United States, 2017 WL 548985 (W.D. N.C., Feb. 8, 2017)(unpublished); Valencia-Trujillo v. United States, 2017 WL 3336491 (M.D. Fla., Aug. 4, 2017)(unpublished); Clark v. Harmon, 2017 WL 2493271, at *2 (N.D. Tex., May 10, 2017)(unpublished); Farkas v. Andrews, 2017 WL 4518684 (E.D. N.C., Oct. 10, 2017)(unpublished); Rand v. United States, 2018 WL 1114376 (N.D. Tex., Jan. 8, 2018)(unpublished); United States v. Watson, 2017 WL 4698962 (S.D. Tex., Oct. 19, 2017)(unpublished). Luis therefore does not afford Defendant a later accrual date for purposes of § 2255(f)(3), and the Motion is time-barred under § 2255(f)(1).

United States v. Hopkins, No. 2:09-cr-000863 MCA, 2018 WL 1393780 (D. N.M. Mar. 19, 2018).

Even if Luis is considered to enunciate a new rule, it is one of procedure, not substance. As such, to have retroactive impact, is must constitute a watershed rule of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding. Watershed rules are an "extremely narrow" class, Schriro v. Summerlin, 542 U.S. 348, 352 (2004), and must be ones "without which the likelihood of an accurate conviction is

seriously diminished." Id. (quoting Teague v. Lane, 489 U.S. at 313). "In order to qualify as watershed, a new rule must meet two requirements. First, the rule must be necessary to prevent an impermissibly large risk of an inaccurate conviction. Second, the rule must alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding." Whorton v. Bockting, 549 U.S. 406, 418 (2007). In Valencia-Trujillo v. United States, No. 8:11cv 428-T- 17EAJ, 2017 WL 3336491, *8 (M.D. Fla. Aug. 4, 2017), the court found Luis not to "meet those stringent standards."

Since Luis was decided, no court has found it to have retroactive effect on collateral review. Many courts have not. In addition to those cited by the Hopkins court, other courts denying retroactive application to Luis on collateral review include United States v. Smith, No. 16-61210-CIV, 2016 WL 9108538, *2 (S.D. Fla. June 8, 2016) ("Luis has not been given retroactive application."); United States v. Sadiq, No. 12-20272, 2017 WL 3457175, *4 (Aug. 11, 2017) ("Luis's holding has not been held to be retroactive."); Guzman v. United States, No. 3:10-CR-161, 2018 WL 1586099, *12 (E.D. Tenn. Mar. 30, 2018) ("Petitioner has not established that Luis has been made retroactively applicable to cases on collateral review."); Marquez v. United States, No. EP-17-CV-65-DB, 2017 WL 10186412, *2 ("Marquez has, through her conclusory assertions, still not shown that Luis applies retroactively to cases on collateral review."); Fleming v. Upton, No. 4:16-CV-1042-Y, 2018 WL 488724, *2 (N.D. Tex. Jan. 19, 2018) ("Furthermore, the Fifth Circuit already issued an order rejecting Fleming's contention that the Luis case was made retroactive.").

In addition, three district courts in the Fourth Circuit have declined to give Luis retroactive application on collateral review. In Noel v. United States, No. 1:16cv-406-RLV,

2017 WL 548985, *3 (W.D.N.C. Feb. 8, 2017), the petitioner in a § 2255 habeas petition argued that Luis should be given retroactive application on collateral review as it represented a sea change in the law. The district court disagreed, as follows:

> Petitioner has not shown that his petition is timely in light of the Supreme Court's decision in Luis. Assuming that Luis even applies to the facts of Petitioner's case, Petitioner fails to explain why this Court should find that Luis applies retroactively to cases on collateral review. Thus, Petitioner has failed to show that his petition is timely under Section 2255(f)(3) in light of Luis.

The Fourth Circuit affirmed the district court in Noel in an unpublished per curiam decision, stating that "[w]e have independently reviewed the record and conclude that Noel has not made the requisite showing. Accordingly, we deny a certificate of appealability and dismiss the appeal." United States v. Noel, 725 Fed. Appx. 236 (4th Cir. May 30, 2018). Likewise, in Farkas v. Andrews, No. 5:17-HC-2070-D, 2017 WL 4518648 (E.D. N.C. October 10, 2017), the court considered whether a petition seeking retroactive application of Luis under 28 U.S.C. § 2241 fell within the savings clause of § 2255(e) and found it did not, in part because "Luis does not apply retroactively on collateral review." Id. at *3 (citing Valencia-Trujillo, Clark v. Harmon, and Noel). Finally, in Bundy v. United States, No. JKB-14-0221, 2018 WL 3458312 (D. Md. July 18, 2018), the Maryland district court held that "the Luis ruling has not been held retroactively applicable on collateral review as of this writing. Thus, Luis does not afford a basis for Bundy to claim relief." Id. at *4, n. 8 (citing Valencia-Trujillo).

The court agrees with this avalanche of precedent that Luis is not entitled to retroactive application on collateral review. While the issue of a new rule is a close one, there is no basis to suggest that Luis represents a watershed rule of criminal procedure. As such,

13

the court cannot find that the rule announced in Luis established a new rule of constitutional law with retroactive application.

## C.

The facts of this case provide additional reasons why Patel's reliance on Luis is unavailing. First, Luis is distinguishable from the present matter as Sila Luis needed the restrained funds to privately retain an attorney. Luis, 136 S. Ct. at 1087-88. Here, in contrast, Patel did not need the restrained assets to retain counsel as he was represented by retained counsel of his choice and had already paid counsel fees in an amount the court considered to be sufficient to defend this case.

Second, the court addressed the issue of Patel's need for release of forfeited substitute assets when it held the Farmer hearing. The January 11, 2013 memorandum opinion issued after the Farmer hearing analyzed the nature of the assets at issue and focused on whether Patel demonstrated that he lacked sufficient funds to pay counsel.[6]

---

[6] Specifically, in its analysis, the court found Patel's argument for release of his substitute assets foreclosed by Fourth Circuit precedent binding at that time. In re Billman, 915 F.2d 916 (4th Cir. 1990), cert. denied, 500 U.S. 952 (1991), held that, pursuant to 18 U.S.C. § 1963, a district court may legitimately restrain, pending trial, the disposal of substitute assets or assets that would only be secondarily forfeitable upon conviction if the defendant had placed primary assets beyond the jurisdiction of the court. Id. at 921. Billman was followed in United States v. Bollin, 264 F.3d 391, 422 (4th Cir. 2001) (holding defendant's substitute assets to be subject to pretrial restraint to preserve their availability for forfeiture). At the time the court ruled on Patel's motion in 2013, Billman and Bollin were controlling circuit precedent. After Luis, the Fourth Circuit expressly overruled both cases in United States v. Chamberlain, 868 F.3d 290, 295 (4th Cir. 2017) ("Following Luis, however, these bases for permitting the pretrial restraint of substitute assets under these statutory provisions appear far less certain. Indeed, as discussed below, the plain language of Section 853 indicates that Congress did not intend the statute to permit such restraint. Accordingly, we hereby overrule Billman and Bollin.").

Prior to Chamberlain's abrogation of Billman and Bollin, most district courts in the Fourth Circuit required the pretrial restraint of substitute assets. Patel relied on an alternative approach taken in United States v. Najjar, 57 F. Supp. 2d 205 (D. Md. 1999), where the court concluded the pretrial restraint of substitute assets to be authorized, but not required, by the statute, rather merely authorized, finding the distinction between tainted and untainted assets important to its conclusion. The Najjar court distinguished Billman, concluding that the defendant's "Sixth Amendment right to counsel [was] simply more important than the [g]overnment's interest in the untainted portion of [d]efendant's substitute property." Id. at 209.

Distilled to its essence, the approach considered in Najjar forecasts the approach taken in Luis where the balance between the defendant's Sixth Amendment right to counsel and the government's interests in securing forfeiture is contingent upon the nature of the assets at issue and the need for such assets. See Luis, 136 S. Ct. at 1101. After Patel's Farmer hearing, the court considered this approach and found that "[e]ven under the Najjar court's reading of

14

After reviewing the amount of fees Patel had already paid his retained counsel, the court held that release of additional assets was unnecessary. Patel, 949 F. Supp. 2d at 662-63. While Patel initially appealed the court's January 13, 2013 ruling that additional funds were not needed, he withdrew that appeal a month after pleading guilty. As a general rule, "claims will ordinarily not be entertained under § 2255 that have already been rejected on direct review." Reed v. Farley, 512 U.S. 339, 358 (1994) (Scalia, J., concurring in part and concurring in judgment); see United States v. Frady, 456 U.S. 152, 165 (1982) ("[W]e have long and consistently affirmed that a collateral challenge may not do service for an appeal.").

At the end of the day, Luis does not require the government to release all forfeited substitute assets. Rather, Luis holds that the Sixth Amendment is implicated only if forfeited substitute assets are needed for trial counsel. See United States v. Marshall, No. 16-4494, 2018 WL 5809728, *4 (4th Cir. Nov. 6, 2018) ("Because Marshall was represented by the counsel of his choice, there was no need for the seized funds and, thus, no Luis error."); United States v. Gordon, 657 Fed. Appx. 773, 779 (4th Cir. 2016) ("Gordon did not need the assets to retain counsel as he, in fact, had retained counsel of his choice and that counsel 'thorough[ly] and vigorous[ly]' represented him at trial. Therefore, unlike the court's order in Luis, the government's actions in imposing pretrial restraints on his assets did not prevent him from exercising his Sixth Amendment right to retain counsel of his choice."). The same is true here. Following the Farmer hearing, the court concluded that Patel had not established that sufficient funds were unavailable for trial counsel, holding as follows: "Here,

---

Billman," release of Patel's assets would only be appropriate if Patel established that he lacked sufficient funds to pay counsel. Patel, 949 F. Supp. 2d at 662. After reviewing the "magnitude of counsel fees paid to Patel's lawyers," presented to the court in a sealed letter, the court concluded that Patel failed to make such a showing. Id. at 663 n. 20.

15

Patel cannot make that showing as his counsel has been paid funds which the court believes are more than sufficient to defend this case. Certainly, given the amount of fees that have been paid to Patel's lawyers, there can be no credible argument that Patel's Sixth Amendment rights are in danger of being infringed." Patel, 949 F. Supp. 2d at 663. See also United States v. Singleton, No. 5:13-CR-8-KKC-REW, 2018 WL 5075982 (E.D. Ky. March 20, 2018) (holding that Luis did not undermine the Sixth Circuit's framework for ascertaining need to release assets to pay for counsel).

Both because Luis does not have retroactive application on collateral review and because Patel had access to funds to pay his counsel sufficient funds to defend this case, Patel's Sixth Amendment claim must be denied.

## IV.

In his second claim, Patel asserts the government violated his rights pursuant to Brady v. Maryland, 373 U.S. 83 (1963), when it failed to disclose the OIG's ongoing investigation into ATF misconduct. Patel alleges the OIG Report identifies ATF misconduct underlying Patel's criminal investigation and conviction.

For this claim, Patel relies on § 2255(f)(4) to assert timeliness. The renewed limitations period under § 2255(f)(4) begins on the date on which evidence supporting the claim "could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4). In addition, equitable tolling applies to the statute of limitations in § 2255 proceedings. Holland v. Florida, 560 U.S. 631, 649 (2010), if a petitioner can show (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing. In order to benefit from equitable tolling, Patel must

establish "extraordinary circumstances beyond [his] control that made it impossible to file the claims on time." Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000).

### A.

The parties dispute whether Patel exercised due diligence in discovering the OIG Report for the purposes of § 2255(f)(4). Patel argues his claim was filed within one year of discovering the OIG Report "through the exercise of due diligence," when he was alerted to the OIG Report by his son, who was prompted to search for "information concerning nefarious ATF activities" when the Supreme Court announced its ruling in Luis, 136 S. Ct. at 1088-96. Patel's son alerted him to the discovery of the OIG Report in December 2016. The government counters that Patel's Brady claim is untimely because the OIG Report could have been discovered when it was publicly released in September 2013, and reported on in the Washington Post on September 25, 2013, a month after Patel was sentenced.[7] As detailed in Patel's counsel's letter of January 18, 2018, the New York Times revealed more details relevant to ATF's cigarette churning operations in September 2017. ECF No. 893.

Patel's principal argument for not filing his habeas petition until more than three years had passed since the OIG Report issued was that he was incarcerated. The ATF OIG Report upon which Patel founds his Brady claim was publicly released in September 2013 and was reported on in the national media on September 25, 2013. At the time, however, Patel was not yet in custody, as he did not voluntarily surrender for another month, on October 29, 2013. ECF No. 701. Moreover, Patel was represented by his retained counsel when the Washington Post article broke, as evidenced by a pleading filed on November 6,

---

[7] Patel was sentenced on August 14, 2013, and his judgment was entered on August 29, 2013. ECF Nos. 625, 654. Patel did not appeal, and his conviction became final thirty days later, on September 28, 2013.

17

2013. ECF No. 702. Thus, he cannot claim that his custodial status somehow prevented him from exercising due diligence.

Patel did not file his § 2255 petition until March 30, 2017, more than three years after the OIG Report became public. He argues that his petition is timely because he only learned of the OIG Report in December 2016, when his son found it on the Internet. But § 2255(f)(4) does not contain an actual notice standard, rather, it is a due diligence one. Under these circumstances, it cannot be said that Patel exercised reasonable diligence to discover his Brady claim based on the 2013 OIG Report. As such, his 2017 petition, as pleaded, is untimely even considering § 2255(f)(4).

Nor may Patel benefit from equitable tolling. Equitable tolling is available only in "those rare instances where — due to circumstances external to the party's own conduct — it would be unconscionable to enforce the limitation period against the party and gross injustice would result." Harris, 209 F.3d at 330. Generally, a petitioner seeking equitable tolling must demonstrate that he has been diligently pursuing his rights and that some extraordinary circumstances stood in his way to prevent him from filing a timely petition. See Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Rouse v. R.C. Lee, 339 F.3d 238, 246 (4th Cir. 2003). Thus, to be entitled to equitable tolling, an otherwise time-barred petitioner must present "(1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time." Id. at 246. Patel's argument that he was incarcerated for most of the limitations period does not constitute an extraordinary circumstance warranting equitable tolling. Indeed, in the context of § 2255 petitions, incarceration is the ordinary circumstance. See United States v. Sosa, 364 F.3d 507, 512 (4th

Cir. 2004) ("[E]ven in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling.").

Because the OIG Report was publicly available before Patel's conviction became final, he cannot claim due diligence regarding the underlying OIG investigation and the issues raised in the OIG Report. As such, the one-year statute of limitations bars Patel's Brady claim based on the OIG Report. Thus, Patel's § 2255 petition, as pleaded, must be dismissed as untimely.

## B.

Nevertheless, Patel claims that since the time he filed his petition, additional claimed improprieties surrounding the use of an ATF management account associated with Big South tobacco warehouse in Bristol, Virginia, have surfaced. These issues only came to light in 2017 as a result of New York Times reporting. To the extent that these 2017 revelations raise Brady claims beyond those contained in the September 2013 OIG Report, an argument can be made that they are not time barred. Accordingly, the court will grant Patel leave to amend his § 2255 petition to allege Brady violations, if any, that transcend the issues raised in the 2013 OIG Report.

## V.

For the reasons stated, the first claim of Patel's § 2255 motion, founded on retroactive application of the Supreme Court's decision in Luis, is **DENIED**, and the government's motion to dismiss is **GRANTED** as to that claim. Given the uniformity of precedent holding that Luis does not have retroactive application on collateral review and

the facts of this case, a Certificate of Appealability is **DENIED** as to Patel's <u>Luis</u> claim.

Patel's second claim, asserting a <u>Brady</u> violation by failing to provide information as to an Office of Inspector General investigation, is barred by the one year statute of limitations contained in § 2255(f), and is not extended by either § 2255(f)(4) or the doctrine of equitable tolling. Patel makes no meritorious argument for the extension of the limitation period until he learned of the OIG Report more than three years after it received national media attention in September 2013. As such, Patel's petition, as pleaded, is untimely, and the government's motion to dismiss his <u>Brady</u> claim is **GRANTED**. A Certificate of Appealability is DENIED as to the untimely <u>Brady</u> claim alleged in the petition.

However, given Patel's assertion of additional revelations in 2017, Patel will be given an opportunity to amend his petition to allege any <u>Brady</u> claims that are not time barred.

An appropriate Order will be entered this day.

Entered: This 12 day of December, 2018

/s/ Michael F. Urbanski
Michael F. Urbanski
Chief United States District Judge