CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 0 4 2019

JULIA C. DUDLEY, CLERK
BY: /s/
    DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# HARRISONBURG DIVISION

| | |
|---|---|
| ANJAY PATEL,<br>    Petitioner,<br>v.<br><br>UNITED STATES OF AMERICA,<br>    Respondent. | Criminal Action No. 5:11-CR-00031<br><br><br><br>By: Michael F. Urbanski<br>     Chief United States District Judge |

## MEMORANDUM OPINION

This matter is before the court on the motion filed by respondent United States of America to dismiss petitioner Anjay Patel's First Amended Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255. ECF No. 913. For the reasons stated in this memorandum opinion, the government's motion to dismiss will be **GRANTED** and this case **DISMISSED**.

## I.

By memorandum opinion and order entered on December 13, 2018, the court granted the United States' motion to dismiss Patel's original § 2255 petition, which asserted two claims.

First, Patel brought a claim under the Sixth Amendment asserting that the court's 2013 ruling denying release of forfeited substitute assets to pay his retained counsel was undone by the 2016 Supreme Court decision in Luis v. United States, 136 S. Ct. 1083 (2016). As to that claim, the court ruled that "[b]oth because Luis does not have retroactive application on collateral review and because Patel had access to funds to pay his counsel sufficient funds to defend this case, Patel's Sixth Amendment claim must be denied." Memorandum Opinion, ECF No. 899, at 16.

Patel's second claim alleged a violation of the government's discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963), for failing to disclose a U.S. Department of Justice Office of Inspector General (OIG) investigation resulting in a September 2013 Audit Report entitled *Audit of the Bureau of Alcohol, Tobacco, Firearms and Explosives' Use of Income-Generating, Undercover Operations* ("2013 OIG Report").[1] The 2013 OIG Report was the subject of an article published in the Washington Post on September 25, 2013.[2] Although the 2013 OIG Report was issued and reported on in the national media in 2013, Patel did not file his Brady violation claim until March 30, 2017, more than three years later. The court found his 2017 petition untimely, finding that "it cannot be said that Patel exercised reasonable diligence to discover his Brady claim based on the 2013 OIG Report." Memorandum Opinion, ECF No. 899, at 18.

Nonetheless, Patel asserted that since the time he filed his petition, additional claimed improprieties surrounding the use of an ATF management account associated with Big South Wholesale tobacco warehouse in Bristol, Virginia have surfaced. Given that these issues came to light following New York Times reporting in 2017, the court granted Patel "leave to amend his § 2255 petition to allege Brady violations, if any, that transcend the issues raised in the 2013 OIG Report." Id., at 19. By Order dated December 13, 2018, Patel was "granted leave of court to amend his petition within thirty (30) days to claim a Brady violation based on the 2017 revelation of claimed ATF misuse, in connection with its undercover cigarette operations, of a management account at the Big South tobacco warehouse in Bristol, Virginia." Order, ECF No. 900.

---

[1] This Audit Report is Exhibit B to Patel's Memorandum in Support of § 2255 Petition, ECF No. 871, at 37.
[2] Sari Horwitz, *ATF Lost Track of 2.1 Million Cartons of Cigarettes in Sting Operations, Report Finds*, WASH. POST, Sept. 25, 2013, ECF NO. 871, at 3 n.2.

2

Patel did not comply with the thirty-day time limit in the December 13, 2018 Order, instead filing an amended petition on February 25, 2019. In his amended petition, Patel argues that "the factual predicate for his claim was not discoverable until 2017, rather than 2013 at the time OIG released its report." Amended Petition, ECF No. 907, at 3. Patel bases this argument on four sources of information:

(A) Testimony of ATF Director Thomas Brandon at a hearing conducted by the Committee on Oversight and Government Report, U.S. House of Representatives, on March 9, 2017 captioned <u>Reviewing ATF's Failures in the Death of ICE Agent Jaime Zapata</u>;[3]

(B) A New York Times article by Matt Apuzzo dated September 8, 2017 entitled *I Smell Cash: How the ATF Spent Millions Unchecked*;

(C) A deposition of former ATF Special Agent Thomas P. Lesnak in a civil fraud case pending in North Carolina;[4] and

(D) A September 14, 2017 U.S. Department of Justice Office of Inspector General Investigative Summary entitled *Findings Concerning Misconduct by an Alcohol, Tobacco, Firearms, and Explosives (ATF) Resident Agent in Charge for Multiple Failures in the Management of an Operation, and by an Assistant U.S. Attorney for Having an Inappropriate Relationship With an ATF Agent and Violating Professional Responsibilities* ("2017 OIG Investigative Summary").[5]

---

[3] <u>Reviewing ATF's Failures in the Death of ICE Agent Jaime Zapata: Hearing Before the Comm. On Oversight and Gov't Reform of the House</u>, 115th Cong. Ser. No. 115-18, at 15 (2017), http://www.fdsys.gov, http://oversight.house.gov.

[4] Lesnak's deposition was taken in <u>U.S. Tobacco Cooperative, Inc., et al v. Big South Wholesale of Virginia, LLC et al d/b/a Big Sky International, et al</u>, No. 5:13-cv-00527-F (E.D. N.C.), on March 22, 2016, but was not publicly released until it was linked to the Sept. 8, 2017 New York Times article. Lesnak's deposition is docketed in this case as Exhibit 2 to the government's motion to dismiss Patel's amended petition. ECF No. 913-2.

[5] The 2017 Investigative Summary is docketed as Exhibit 1 to the government's motion to dismiss Patel's amended petition. ECF No. 913-1.

The court has examined Patel's amended petition and each of the bases upon which he asserts that the facts underlying his Brady claim were not discoverable until 2017. While the first three sources of information cited by Patel, i.e., Director Brandon's testimony, the 2017 New York Times reporting, and the Lesnak deposition, refer to ATF misdeeds in tobacco undercover operations, none of these supports Patel's claim that his petition was timely filed. In sum, these sources of information contain no new revelations of wrongdoing material to Patel's prosecution requiring Brady disclosures beyond those associated with the 2013 OIG Report. The only thing tying Patel's fourth source, the 2017 OIG Investigative Summary, to this case is sheer speculation. As such, none of the 2017 materials referenced by Patel serve to resuscitate his untimely Brady claim. The court will address each of these 2017 sources of information in turn.

## II.

### A.

A February 22, 2017 New York Times article authored by Matt Apuzzo and entitled "*A.T.F. Filled Secret Bank Account With Millions From Shadowy Cigarette Sales*," led the House of Representatives Committee on Oversight and Government Reform to question ATF Director Brandon about undercover tobacco operations on March 9, 2017. The New York Times article itself references a federal civil lawsuit brought by a collective of tobacco farmers in North Carolina alleging that two ATF confidential informants, Jason Carpenter and Christopher Small, defrauded them by operating, and later selling the assets of, a tobacco warehouse ("Big South Wholesale") located in Bristol, Virginia. While the article mentions that the alleged scheme went beyond the problems cited in the 2013 OIG Report,

4

nothing in the article suggests any connection between the operation and sale of the Big South Wholesale tobacco warehouse and the Patel case.

A few weeks later, on March 9, 2017, ATF Director Brandon, testifying before a congressional committee convened to address other unrelated ATF issues, stated:

> I also understand the committee's interest in recent media reports regarding ATF tobacco investigation. That investigation is the subject of an ongoing Federal civil lawsuit, and the Court has sealed the case pending trial. The United States is a party to that litigation, and, therefore, the Court's order is binding on ATF, and me. Consequently, my ability to respond to questions specific to that investigation is extremely limited at this time.
>
> What I can advise the committee is that the OIG conducted a full program audit of ATF's income-generating undercover activities beginning in 2011, and issued a comprehensive report in September 2013. That report, which evaluated the period of 2006 to 2011, identified serious deficiencies in ATF's policies and controls over those investigations.
>
> Before the OIG issued the report, ATF had internally recognized the need for more robust policies, procedures, and oversight on income-generating undercover activity investigations, and had begun implementing enhancements in 2011. In April 2013, ATF issued a comprehensive order governing tobacco investigations, including strict rules on the use of income-generating undercover activities.
>
> ATF is not currently using this technique, and has not done so since 2013, and will not do so in the future unless very specific and limited parameters are met. ATF has closed all of these bank accounts and deposited all remaining funds from those accounts in the U.S. Treasury General Fund. Beyond implementation and strict enforcement of the April 2013 order, as noted, ATF has implemented all of the OIG's 2013 recommendations, and, as a result by October 2015, the OIG has closed all of its recommendations.

<u>Reviewing ATF's Failures in the Death of ICE Agent Jaime Zapata: Hearing Before the Comm. On Oversight and Gov't Reform of the House</u>, 115th Cong. Ser. No. 115-18, at 15

5

(2017), http://www.fdsys.gov, http://oversight.house.gov. In response to questions, ATF Director Brandon testified further:

> The one thing I would like to assert is what the OIG, their thorough investigation of our churning cases, as you said, where we recognized there was a problem 7 years ago. In candor to you and the committee, the policy was lacking. The oversight was lacking. The leadership was poor. And we shut those down. There has not been a churning case since 2013.
>
> But I compliment the OIG and his team because they did an excellent report. We cooperated fully, and there are no longer any outstanding recommendations regarding churning from the OIG with ATF.
>
> \*   \*   \*   \*
>
> But in churning in general and how the OIG's report was spot on, and that oversight was deficient, policy was deficient, it was a hot mess. And that is why we shut it down, all of them, in 2013.

Id. at 44, 53.

Patel claims that ATF Director Brandon's March 9, 2017 testimony reopens the window for filing his habeas claim because it was the first time the ATF publicly embraced the 2013 OIG Report. But ATF Director Brandon's testimony contains no new facts that could give rise to an additional Brady violation and instead merely reaffirms the findings of the 2013 OIG Report. The fact that ATF Director Brandon testified before Congress in March 2017 that the 2013 OIG Report was "spot on" does not erase the fact that the 2013 OIF Report received national media attention in September, 2013, a month after Patel was sentenced, or render timely Patel's lack of diligence in pursuing a Brady claim founded on the 2013 OIG Report. The 2013 OIG Report was subject to discovery in September 2013 through the exercise of due diligence, and Patel's opportunity to timely pursue a habeas

6

claim founded on the government's failure to disclose the OIG investigation into ATF's tobacco churning operations began at that time. ATF Director Brandon's testimony in March, 2017, three and a half years later, confirming the verity of the 2013 OIG Report, cannot excuse Patel's delay or reopen the one year limitations period under 28 U.S.C. § 2255(f).

**B.**

On September 8, 2017, the New York Times again reported on the Big South Wholesale civil lawsuit and ATF's financial dealings. Matt Apuzzo, *"'I Smell Cash': How the A.T.F. Spent Millions Unchecked,"* N.Y. Times, Sept. 8, 2017. This reporting stems from documents and testimony obtained by unsealing portions of the discovery in the North Carolina federal case. The article summarized: "The documents tell a bizarre story of how federal agents set up shop inside a southern Virginia tobacco business, and treated its bank account as their own. At least tens of millions of dollars moved through the account before it was shut down in 2013, but no one can say for sure how much. The government never tracked it." Id. The article reports that "Mr. Carpenter's and Mr. Small's company, Big South Wholesale, quickly became the national warehouse for all of A.T.F.'s smuggling investigations, records show." Id. But even this article reaches back to the 2013 OIG Report, noting that "[i]n September 2013, a Justice Department review found widespread problems with A.T.F. tobacco investigations." Id. Again, there is nothing in this article that would suggest a potential Brady violation beyond those outlined in the 2013 OIG Report.

7

## C.

The September 8, 2017 New York Times article contained a link to the deposition of retired ATF agent Lesnak, and the court accepts Patel's representation that the Lesnak deposition was not publicly available until that time. Nevertheless, review of the Lesnak deposition reveals that it focuses on his shepherding of confidential informants Jason Carpenter and Christopher Small in their operation of the Big South Wholesale undercover warehouse operation and the negotiation of an asset purchase agreement with plaintiff in the civil lawsuit, U.S. Tobacco Cooperative, Inc. Certainly, the testimony reveals that Big South Wholesale assisted the ATF with undercover tobacco operations, including purchasing and selling untaxed cigarettes, but there is no mention in the Lesnak deposition of the Patel investigation or prosecution. Indeed, there is nothing in the Lesnak deposition suggesting the existence of material information favorable to Patel related to ATF's handling of undercover cigarette trafficking operations beyond that detailed in the 2013 OIG Report. As was the case with ATF Director Brandon's testimony, Lesnak agreed with the findings of the 2013 OIG Report as to problems with ATF undercover churning operations. Lesnak testified:

> It was a terrible process. We – we made a lot of mistakes, we as an agency early on, and obviously that – that changed in the second when the orders actually came out because we ended up having in – and I – I forget what – and I'm – I'll tell you what the OIG report said and they were right. There were 24 operations and 24 operations ran 24 different ways and that was ridiculous and it caused a lot of problems.

Thomas Lesnak Dep., ECF No. 913-3, at 44.

The fact that the Lesnak deposition was only made available after Patel filed his habeas petition in 2017 cannot unring the bell rung in September, 2013 when the 2013 OIG Report was released and publicized in national media. Again, the Washington Post covered the 2013 OIG Report on September 25, 2013, between the time Patel was sentenced, August 14, 2013, and the date he reported to begin serving his sentence, October 29, 2013. Throughout this period, Patel was represented by retained counsel, and cannot argue that his subsequent custodial status somehow prevented him from exercising due diligence. Patel's claim, filed on March 30, 2017, more than three years after the 2013 OIG Report became public, is untimely.

### D.

As regards the fourth source of information, a September 14, 2017 Justice Department OIG Investigative Summary, there is nothing beyond utter speculation to connect that summary to this case. Indeed, the government responds that "a Google search suggests that the 2017 OIG summary relates to an investigation that took place in Georgia." Motion to Dismiss, ECF No. 913, at 14. Media reports about the Georgia ATF scandal attached to the government's brief support the apparent connection between the OIG Investigative Summary and the reported affair between an AUSA in the Southern District of Georgia and an ATF Special Agent located there. See ECF Nos. 913-4, 913-5, 913-6 and 913-7. Moreover, the government states that the Investigative Summary cannot relate to this case as it states that the ATF "RAC [Resident Agent in Charge] and AUSA are no longer employed by the federal government," and ATF Special Agent Flagg involved in the Patel case is still employed by the federal government. While it is true that a female AUSA

working on forfeiture aspects of Patel's case has retired, her gender and retirement status are woefully inadequate to establish a material connection between the 2017 OIG Investigative Summary and the Patel case. Patel has made no plausible showing that this information was in any respect material to this case. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level.").

### III.

In sum, while Patel had a credible claim that the 2013 OIG Report and the underlying investigation should have been subject to Brady disclosure during his prosecution and before he entered his guilty plea and was sentenced, he waited too long to bring it. Nothing about the 2017 materials referenced in his amended petition gives rise to a Brady claim that is not already time barred. ATF Director Brandon's testimony does nothing more than bless the 2013 OIG Report; the New York Times reporting on the Big South Wholesale case and the deposition taken of ATF agent Lesnak provide no source for a timely Brady violation related to the Patel prosecution; and there has been no showing, other than wild conjecture, that the September 2017 OIG Investigative Summary bears on Patel's case. Because Patel's Amended Petition raises no plausible claim of a Brady violation transcending the information contained in the 2013 OIG Report, it must be **DISMISSED** as untimely.

Given that the Amended Petition fails to assert a timely Brady claim, a Certificate of Appealability is **DENIED**.

An appropriate Order will be entered this day.

                                     Entered: This 3rd day of June, 2019

                                     /s/ Michael F. Urbanski
                                     Michael F. Urbanski
                                     Chief United States District Judge