CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
9/9/2020
JULIA C. DUDLEY, CLERK
BY: s/ J. Vasquez
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Action No. 5:11-CR-00031 |
| | ) | |
| v. | ) | |
| | ) | |
| ANJAY PATEL | ) | By:  Michael F. Urbanski |
| | ) | Chief United States District Judge |

# MEMORANDUM OPINION

In this closed criminal case, defendant Anjay Patel, proceeding pro se, filed a Motion to Discharge Judgment and to Request Accounting. ECF No. 901.[1] In his motion, filed on February 4, 2019, Patel questions the continued existence of a money judgment against him, arguing principally that the sale of certain parcels of real estate, forfeited as substitute property pursuant to Rule 32.2(e) of the Federal Rules of Criminal Procedure and 21 U.S.C. § 853(p), should have been sufficient to satisfy the entire money judgment. Because the sale of the real estate only yielded $136,000 in proceeds, the government contends that Patel still owes $261,924.32 of the original $400,000 money judgment.  As detailed herein, Patel has waited years to challenge the amount of money obtained from the sale of this real estate and credited against his judgment. As a result, his request for discharge and an accounting comes far too late to be considered by the court. In addition, Patel waived any challenge to forfeiture in his Plea Agreement. Accordingly, Patel's motion is **DENIED**.

I.

---

[1] On July 8, 2019, the court referred this motion to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B). Order, ECF No. 922. It is hereby **ORDERED** that the reference is **WITHDRAWN**.

1

Anjay Patel and others were named in a multi-count indictment charging conspiracy to distribute contraband cigarettes, money laundering and related charges. On February 13, 2013, Patel pled guilty to Counts 1, 2, 56, 133, 156 and 169 of the indictment charging conspiracy to distribute contraband cigarettes, conspiracy to commit money laundering, trafficking in contraband cigarettes, money laundering to promote distribution of contraband cigarettes, money laundering related to the proceeds from the sale of contraband cigarettes and controlled substances, and engaging in a monetary transaction in criminally derived funds greater than $10,000. Plea Agreement, ECF No. 490.

Patel's Plea Agreement provided for the forfeiture of substantial assets, including a $400,000 forfeiture money judgment, quantities of currency, bank accounts, jewelry, real estate, vehicles, and other proceeds. In the Plea Agreement, Patel agreed:

> I understand and agree that forfeiture of this property is proportionate to the degree and nature of the offense committed by me. I freely and knowingly waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes and excessive fine or punishment. I further understand and agree this forfeiture is separate and distinct from, and is not in the nature of, or in lieu of, any penalty that may be imposed by the Court.

Id. at 10.

Patel was sentenced on August 13, 2013 to 84 months in prison, and the criminal judgment was entered on August 29, 2013. ECF No. 654. Attached to Patel's criminal judgment was an Amended Preliminary Order of Forfeiture, Final as to Defendant, entered by the court the day before, August 28, 2013. ECF Nos. 653 and 654-3. Consistent with Patel's

Plea Agreement, the Amended Preliminary Order of Forfeiture, Final as to Defendant, reflected the agreed upon $400,000 money judgment.

> B. Pursuant to Rule 32.2(b)(1)(A) of the Federal Rules of Criminal Procedure and the defendant's plea agreement, the Court finds a money judgment in the amount of $400,000.00 shall be entered, in that such sum in aggregate was obtained directly or indirectly as a result of said violations or is traceable to such property.

ECF No. 653, at 1.

On December 6, 2013, an Amended Order of Forfeiture as to Certain Substitute Property of Defendant and Amended Protective Order was entered. ECF No. 717. This Amended Order of Forfeiture was presented to the court as "Seen and Agreed" by counsel for Patel and the United States. Id. at 5. The agreed December 6, 2013 Amended Order of Forfeiture stated that as "the value of the proceeds of the offense for which the defendant was convicted . . . are no longer available for forfeiture for one or more of the reasons set forth in 21 U.S.C. § 853(p) . . . the United States is entitled to an order forfeiting other property of the defendant as a substitute for the unavailable property ordered forfeited." Id. at 1-2. The December 6, 2013 Amended Order of Forfeiture provided that "the entity known as SIA Investments, LLC, and all assets," including three parcels of real estate in McCormick, Greenville, and Greer, South Carolina, and $12,4648.69 in currency, be forfeited as substitute property. Id. Anjay Patel was a fifty percent owner of SIA Investments, LLC ("SIA").

Six months later, on June 25, 2014, the court entered a Second Final Order of Forfeiture as to Certain Assets and Resolution of Interests of SIA Investments, LLC and Miriam B. Adams. ECF No. 788. The June 25, 2014 Second Final Order of Forfeiture reflected that proper notice had been provided concerning the forfeiture of the SIA assets and explained

that six parcels of real estate, including the three referenced in the December 6, 2013 Amended Order of Forfeiture, were forfeited to the United States. At the same time, the June 25, 2014 Second Final Order of Forfeiture announced that the real estate was being conveyed to SIA in exchange for the settlement sum of $136,000. The Second Final Order of Forfeiture attached a copy of an Agreement of Settlement and Compromise of the SIA LLC's Petition in Ancillary Proceeding, reflecting the agreement by the United States to convey the real estate parcels in dispute to SIA in exchange for $136,000. ECF No. 788-3.

Patel did not appeal his criminal judgment, or any of the orders of forfeiture, and the time for doing so pursuant to Federal Rule of Appellate Procedure 4(b) has long since expired. Patel did later file a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255. ECF No. 871. Patel's § 2255 motion was dismissed in the district court and on appeal. ECF Nos. 918, 932. Patel's Rule 60(b) motion was dismissed as being a successive § 2255 motion. ECF No. 935.[2]

## II.

"Criminal forfeiture statutes empower the Government to confiscate property derived from or used to facilitate criminal activity. Such statutes serve important governmental interests such as 'separating a criminal from his ill-gotten gains,' 'returning property, in full, to those wrongfully deprived or defrauded of it,' and 'lessen[ing] the economic power' of criminal

---

[2] Patel's § 2255 motion did not address his present concerns over the money judgment, nor could it as the federal habeas corpus statutes are limited to custodial challenges. See United States v. Alquza, No. 3:11cr373-FDW, 2017 WL 4451146, at *3 (W.D. N.C. Sept. 21, 2017) ("The custodial limitation embedded in the text of the federal postconviction statutes makes plain that convicted defendants have no right to use those statutes to raise freestanding challenges to the non-custodial components of their sentences, including forfeiture orders.").

4

enterprises." Honeycutt v. United States, 137 S. Ct. 1626, 1631 (2017) (quoting Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 629-630 (1989)).

Criminal forfeiture is governed by 18 U.S.C. § 982, which incorporates the procedures set forth in 21 U.S.C. § 853. See 18 U.S.C. § 982(b)(1); 28 U.S.C. 2461(c).

> Traditionally, forfeiture was an action against the tainted property itself and thus proceeded *in rem*; that is, proceedings in which "[t]he thing [was] primarily considered as the offender, or rather the offence [was] attached primarily to the thing." The Palmyra, 12 Wheat. 1, 14 (1827). The forfeiture "proceeding *in rem* st[ood] independent of, and wholly unaffected by any criminal proceeding *in personam*" against the defendant. Id., at 15. Congress altered this distinction in enacting § 853 by effectively merging the *in rem* forfeiture proceeding with the *in personam* criminal proceeding and by expanding forfeiture to include not just the "thing" but "property . . . derived from . . . any proceeds" of the crime. § 853(a)(1). But it is clear from its text and structure, § 853 maintains traditional *in rem* forfeiture's focus on tainted property unless one of the preconditions of § 853(p) exists. . . . By adopting an *in personam* aspect to criminal forfeiture, and providing for substitute asset forfeiture, Congress made it easier for the Government to hold the defendant who acquired the tainted property responsible.

Honeycutt, 137 S. Ct. at 1634-35.

"Congress provided just one way for the Government to recoup substitute property when the tainted property itself is unavailable—the procedures outline in § 853(p)." Id., at 1634. Under 21 U.S.C. § 853(p), if property subject to criminal forfeiture cannot be located, has been transferred to a third party, has diminished in value, is placed beyond the jurisdiction of the court, or is commingled with other property as specified in § 853(p)(1), the court "shall order the forfeiture of any other property of the defendant, up to the value of any property described in" § 853(p)(1). 21 U.S.C. § 853(p)(2). "Section 853(p) is not discretionary; rather, the statute mandates forfeiture of substitute assets 'when the tainted property has been placed

5

beyond the reach of a forfeiture.'" United States v. Alamoudi, 452 F.3d 310, 314 (4th Cir. 2006) (quoting United States v. McHan, 345 F.3d 262, 271 (4th Cir. 2003)).

### III.

On February 4, 2019, more than four years after the Second Final Order of Forfeiture was entered providing for the disposition of the SIA property, Patel filed his motion to discharge the forfeiture money judgment he owes to the United States, claiming that the substitution of his interest in SIA extinguished the money judgment which "makes sense considering the four parcels of real estate and inventory owned by SIA that were forfeited were worth far in excess of the $400,000." Motion to Discharge Judgment and to Request Accounting, ECF No. 901, at 4.

The United States responded that Patel was credited with the $136,000 obtained by the sale of the substitute property to SIA and the $12,648.69 in currency seized from SIA, but that he still owes $261,924.32 on the money judgment. United States' Response to Defendant's Motion to Discharge Judgment and to Request Accounting, ECF No. 912.[3] The government argued that the appraised value of the conveyed SIA real estate was $367,904.70. Because Patel was a fifty percent owner of SIA, the government's interest in that property was limited to his share, $183,952.35. Based on this valuation, the government argued that its "settlement with SIA Investments, LLC for $136,000 was fair." Id. at 6.

---

[3] The government described the balance owing on Patel's money judgment following the 2014 settlement with SIA and the entry of the Second Final Order of Forfeiture as follows: "Afterwards, the United States had two sums from the substitute assets to apply to Patel's $400,000 money judgment: the $12,648.69 in U.S. Currency and the $136,000.00 payment from SIA Investments, LLC. This $148,648.69, less case and asset management related expenses, resulted in a money judgment balance of $261,924.32. Since 2014, Patel has made no further payments." Id. at 4.

Patel replied that the government erroneously forfeited all of SIA and that its valuation of SIA is unreliable, resulting in a higher balance on the money judgment than is appropriate. Anjay Patel's Reply to the Government's Response to his Motion to Discharge Judgment, ECF No. 917. As a result, Patel seeks discovery and an evidentiary hearing to determine the value of the assets forfeited to the United States and an order accounting for the amounts collected as a result of the money judgment. Id. at 7.

## IV.

The problem with Patel's request is that it comes too late. Essentially, Patel seeks to undo the Second Final Order of Forfeiture, which was entered on June 25, 2014, more than four years before Patel raised his challenge. The Second Final Order reflected the transfer of the real estate to SIA for $136,000 pursuant to the Settlement Agreement between SIA and the government.

The time to challenge the valuation of that property has long passed. "If a defendant wishes to challenge a forfeiture order entered against him, he must file an appeal within fourteen days of entry of the order. Fed. R. App. P. 4(b). Forfeiture may only be challenged on direct appeal." United States v. Bangiyev, 359 F. Supp. 3d 435, 438 (E.D. Va. 2019) (citing United States v. Filice, 2018 WL 2326616, at *2 (E.D. Ky. May 22, 2018); see also United States v. Alquza, 2017 WL 4451146, at *2 (W.D. N.C. Sept. 21, 2017), aff'd per curiam, 722 F. App'x 348 (4th Cir. 2018)).

In Bangiyev, brothers Eduard and Arkadiy Bangiyev pleaded guilty to participating in a sophisticated counterfeit currency conspiracy in violation of 18 U.S.C. § 1962(d), and later sought to challenge forfeiture orders entered in their cases on the basis of the Supreme Court's

7

subsequent decision in Honeycutt, limiting joint and several liability for property forfeited under 21 U.S.C. § 853(a)(1), and the Fourth Circuit's decision in United States v. Chittenden, 896 F. 3d 633, 640 (4th Cir. 2018), holding that 18 U.S.C. 922(a)(2) precludes joint and several forfeiture liability. The district court denied defendants' efforts to set aside their forfeiture orders under Honeycutt and Chittenden, concluding that because neither defendant challenged his forfeiture on direct appeal, their challenges to their forfeiture orders were untimely. Bangiyev, 359 F. Supp. 3d at 438. The district court also held that waiver provisions in defendants' plea agreements were binding on them. Id. On appeal, the Fourth Circuit affirmed per curiam Eduard Bangiyev's appeal for the reasons stated by the district court, United States v. Bangiyev, 771 Fed. App'x 328 (4th Cir. 2019), and dismissed his brother Arkadiy's appeal based on the waiver of his right to challenge forfeiture in his plea agreement. United States v. Bangiyev, No. 19-6309, 2019 WL 4165302 (4th Cir. July 18, 2019).

Similarly, in Alquza, defendant sought to challenge his forfeiture on the basis of Honeycutt a year and a half after resentencing. Characterizing defendant's motion as an invitation "to reopen orders that finally adjudicated not only his rights, but also third party rights, to three real properties," the court "decline[d] Defendant's untimely invitation." 2017 WL 4451146, at *2. The court explained as follows:

> Defendant cites no procedural reason or law on why, over a year and a half after resentencing, he may challenge the finalized forfeiture portion of his sentence. Indeed, "[a]t sentencing—or at any time before sentencing if the defendant consents—the preliminary forfeiture order become final as to the defendant." Fed. R. Crim. P. 32.2(b)(4)(A). "In a criminal case, a defendant's notice of appeal must be filed in the district court within 14 days after the later of: (i) the entry of either the judgment or the order being appealed; or (ii) the filing of the government's notice of appeal." Fed. R. App. P. 4(b)(1); see Fed. R. Crim. P.

8

> 32.2(b)(4)(C) (rendering Federal Rule of Appellate Procedure 4 applicable here). Here, the forfeiture became final as to Defendant at sentencing, the Government did not file a notice of appeal, Defendant did not timely—or ever—file a direct appeal of the forfeiture orders incorporated into the Amended Judgment, and the time for doing so has now expired. Thus, the forfeiture orders against Defendant are final. See Fed. R. Crim. P. 32.2; Griffith v. Kentucky, 479 U.S. 314, 321 n.6(1987) (an order is "final" when "a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied.)."

Id. Nor was the court able to identify "a means by which this Court may revist the final criminal forfeiture judgment on Defendant's Motion," noting that "Rule 32.2 does not permit Defendant to, outside of a timely appeal in conformance with Rule 4, attack the final forfeiture of properties." Id. at *4.

Other courts around the country have denied similar tardy challenges to forfeiture orders on the basis outlined in Bangiyev and Alquza. See United States v. Purify, No. 13-CR-00028-JED-29, 2017 WL 4875296 (N.D. Okla. Oct. 25, 2017); United States v. Georgiou, No. CR09-88, 2018 WL 9618227 (E.D. Pa. June 19, 2018); United States v. Jones, No. 14-40105-01-DDC, 2017 WL 5904053 (D. Kan. Nov. 30, 2017); United States v. Ball, No. CR 14-20117, 2017 WL 6059298 (E.D. Mich. Dec. 7, 2017); United States v. Concepcion, No. CR 15-15, CR 15-18, 2019 WL 1760520 (D. N.J. Apr. 22, 2019); Lasher v. United States, No. 12 CR. 868 (NRB), 2018 WL 3979596 (S.D.N.Y Aug. 20, 2018).

As in Bangiyev and Alquza, Patel's effort to unwind the Second Final Order of Forfeiture and the Settlement Agreement as to the SIA property comes too late. Because Patel did not raise a challenge to the valuation of the SIA real estate, and the amount thereby credited against his money judgment, until more than four years after the Second Final Order of

9

Forfeiture was entered, his Motion to Discharge Judgment is untimely. In addition, Patel waived any challenge to forfeiture in his Plea Agreement. For these reasons, Patel's Motion to Discharge Judgement and to Request Accounting, ECF No. 901, is **DISMISSED**.

The Clerk is directed to docket this Memorandum Opinion and mail it along with the accompanying Order to pro se defendant Anjay Patel.

It is so **ORDERED**.

Entered: September 8, 2020

Michael F. Urbanski
Chief U.S. District Judge
2020.09.08 16:06:38 -04'00'

Michael F. Urbanski
Chief United States District Judge