CLERKS OFFICE US DISTRICT COURT
AT HARRISONBURG, VA
FILED

11/04/2025
LAURA A. AUSTIN, CLERK
BY: /s/ Amy Fansler
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| ANJAY PATEL,<br>   Petitioner,<br>v.<br><br>UNITED STATES OF AMERICA,<br>   Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>) | Criminal Action No. 5:11-CR-00031<br><br><br>By:  Michael F. Urbanski<br>   Senior United States District Judge |

## MEMORANDUM OPINION

This matter is before the court on the motion filed by respondent United States of America to dismiss as moot petitioner Anjay Patel's Motion for Relief Under Rule 60(d)(3). Mot. to Dismiss, ECF No. 995. For the reasons stated in this memorandum opinion, the government's motion to dismiss the petition on mootness grounds will be **DENIED**. However, because substantial questions remain as to the legal sufficiency and timeliness of Patel's Rule 60(d)(3) fraud on the court motion, the parties will be **DIRECTED** to file supplemental briefing to address these legal issues.

### I.

The court will trace the procedural history of this case before addressing Patel's Rule 60(d)(3) fraud on the court motion. Rule 60(d)(3) Mot., ECF No. 989.

**A. Prosecution, Guilty Plea, and Sentencing.**

In 2011, Anjay Patel and others were named in a multi-count indictment charging conspiracy to traffic in contraband cigarettes, money laundering, and a variety of related crimes. Indictment, ECF No. 3. On February 13, 2023, after substantial prejudgment forfeiture proceedings, Patel pled guilty to six felony counts pursuant to a written plea agreement. Plea Agreement, ECF No. 490. Patel was sentenced on August 14, 2013, to 84

1

months imprisonment, 2 years supervised release, and $2.6 million in restitution. ECF No. 625. The judgment was entered on August 29, 2013, J., ECF No. 654, and Patel reported for service of his sentence to FCI Edgefield on October 29, 2013. ECF No. 701. Patel was represented by retained counsel throughout his case and did not appeal.[1]

### B. Initial 2255 Petition.

More than three years later, on March 30, 2017, Patel filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255. Initial 2255 Petition, ECF No. 871. Patel's Initial 2255 Petition, filed by different counsel, raised two grounds.

First, Patel brought a claim under the Sixth Amendment asserting that the court's 2013 ruling denying release of forfeited substitute assets to pay his retained counsel was called into question by the 2016 Supreme Court decision in Luis v. United States, 578 U.S. 5 (2016). As to that claim, the court ruled that "[b]oth because Luis does not have retroactive application on collateral review and because Patel had access to funds to pay his counsel sufficient funds to defend this case, Patel's Sixth Amendment claim must be denied." Mem. Op., ECF No. 899, at 16.

Patel's second claim alleged a violation of the government's discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963), for failing to disclose a U.S. Department of Justice Office of Inspector General (OIG) investigation resulting in a September 2013 Audit

---

[1] Retained counsel was actively involved in Patel's case even after he reported for service of his sentence. Litigation on the issue of forfeiture of substitute assets continued even after Patel was incarcerated. The court held a hearing on November 26, 2013, with Patel's counsel present, ECF No. 714, and the court entered an Amended Order of Forfeiture as to Substitute Property on December 6, 2013. ECF No. 717. The last docket entry involving retained counsel was on May 1, 2014, when counsel filed a transcript request. ECF No. 773. The reason why the involvement of retained counsel following sentencing is important in this case is that the report of the Department of Justice Office of Inspector General from which Patel's habeas claims springs was issued and reported on in The Washington Post on September 25, 2013, while Patel's retained counsel was actively involved in his case.

Report entitled *Audit of the Bureau of Alcohol, Tobacco, Firearms and Explosives' Use of Income-Generating, Undercover Operations* ("2013 OIG Report").[2] The 2013 OIG Report was the subject of an article published in The Washington Post on September 25, 2013.[3] Although the 2013 OIG Report was issued and reported on in the national media in 2013, Patel did not file his Brady violation claim until March 30, 2017, more than three years later. The court found his 2017 petition untimely, finding that "it cannot be said that Patel exercised reasonable diligence to discover his Brady claim based on the 2013 OIG Report." Mem. Op., ECF No. 899, at 18.

### C. Amended 2255 Petition.

During the pendency of his Initial 2255 Petition, Patel's habeas counsel wrote a letter to the court claiming that since the time he filed his petition, additional claimed improprieties surrounding the use of an ATF management account associated with Big South Wholesale tobacco warehouse in Bristol, Virginia had surfaced. Shon Hopwood Letter, ECF No. 893.[4]

The government responded to the January 18, 2018, letter from Patel's habeas counsel in a brief dated February 16, 2018. Gov't Resp., ECF No. 894. In this brief, the government argues that the new allegations raised in the letter are procedurally or time barred. Only one line in the government's brief appears to address the merits of the new claims, as follows: "In fact, Patel's alleged facts have essentially nothing to do with

---

[2] This Audit Report is Exhibit B to Patel's Memorandum in Support of § 2255 Petition, ECF No. 871, at 37.
[3] Sari Horwitz, *ATF Lost Track of 2.1 Million Cartons of Cigarettes in Sting Operations, Report Finds*, Wash. Post, Sept. 25, 2013, ECF No. 871, at 3 n.2.
[4] Hopwood's letter was dated January 18, 2017, but was docketed on January 18, 2018. ECF No. 893. Plainly, January 18, 2018, is the correct date as the letter refers to Patel's Initial 2255 Petition filed in March 2017.

3

supporting his Brady claim, because they do not demonstrate that the OIG report, or any of the conduct it recites, relates to his particular case." Gov't Resp., ECF No. 894, at 11.

Given that the issues raised in the Hopwood letter came to light following New York Times reporting in September 2017, which was after Patel filed his Initial 2255 Petition on March 30, 2017, the court granted Patel "leave to amend his § 2255 petition to allege Brady violations, if any, that transcend the issues raised in the 2013 OIG Report." Mem. Op., ECF No. 899, at 19. By Order dated December 13, 2018, Patel was "granted leave of court to amend his petition within thirty (30) days to claim a Brady violation based on the 2017 revelation of claimed ATF misuse, in connection with its undercover cigarette operations, of a management account at the Big South tobacco warehouse in Bristol, Virginia." Order, ECF No. 900.

Patel did not comply with the thirty-day time limit in the December 13, 2018, Order, instead filing an amended petition on February 25, 2019. In his amended petition, Patel argues that "the factual predicate for his claim was not discoverable until 2017, rather than 2013 at the time OIG released its report." Amended 2255 Petition, ECF No. 907, at 3. Patel based this argument on four sources of information:

(A) Testimony of ATF Director Thomas Brandon at a hearing conducted by the Committee on Oversight and Government Reform, U.S. House of Representatives, on March 9, 2017 captioned Reviewing ATF's Failures in the Death of ICE Agent Jaime Zapata;[5]

---

[5] Reviewing ATF's Failures in the Death of ICE Agent Jaime Zapata: Hearing Before the Comm. On Oversight and Gov't Reform of the House, 115th Cong. Ser. No. 115-18, at 15 (2017), http://www.fdsys.gov, http://oversight.house.gov.

(B) A New York Times article by Matt Apuzzo dated September 8, 2017 entitled *I Smell Cash: How the ATF Spent Millions Unchecked*;

(C) A deposition of former ATF Special Agent Thomas P. Lesnak in a civil fraud case pending in North Carolina;[6] and

(D) A September 14, 2017 U.S. Department of Justice Office of Inspector General Investigative Summary entitled *Findings Concerning Misconduct by an Alcohol, Tobacco, Firearms, and Explosives (ATF) Resident Agent in Charge for Multiple Failures in the Management of an Operation, and by an Assistant U.S. Attorney for Having an Inappropriate Relationship With an ATF Agent and Violating Professional Responsibilities* ("2017 OIG Investigative Summary").[7]

The government filed a motion to dismiss the Amended 2255 Petition on March 27, 2019. Gov't Mot. to Dismiss, ECF No. 913. In its motion, the government argued that the issues raised in Patel's Amended 2255 Petition did not transcend the issues raised in the 2013 OIG Report and did not meet the court's requirements for the amendment. The motion also asserted that "Patel's 'new' allegations of connections to the 2013 OIG report are factually baseless, and fail to show any connection to the investigation into his criminal conduct." Id. at 9. In a footnote on page 9 of the motion, the government disagrees with Patel that his investigation was the "Operation Alpha" referenced in the 2013 OIG Report based on the dollar figure and number of cigarette cartons specifically alleged in Patel's indictment. Id. at 9 n.5. The government concluded that "[a]s such, the investigation into Patel's cigarette

---

[6] Lesnak's deposition was taken in U.S. Tobacco Cooperative, Inc., et al v. Big South Wholesale of Virginia, LLC et al d/b/a Big Sky International, et al, No. 5:13-cv-00527-F (E.D. N.C.), on March 22, 2016, but was not publicly released until it was linked to the Sept. 8, 2017, New York Times article. Lesnak's deposition is docketed in this case as Exhibit 2 to the government's motion to dismiss Patel's amended petition. ECF No. 913-2.

[7] The 2017 Investigative Summary is docketed as Exhibit 1 to the government's motion to dismiss Patel's amended petition. ECF No. 913-1.

trafficking scheme is plainly not the 'Operation Alpha' referred to in the 2013 OIG report, and Patel has pointed to no other evidence to suggest otherwise." Id. The government's motion also stated that "[n]either the Brandon nor Lesnak testimony or the 2017 Summary mention Patel." Id. at 10. Citing to multiple pages of Lesnak's deposition testimony, the government asserted that "Lesnak was not part of an unauthorized operation," and that "Lesnak's substantive testimony relates to the 2013 OIG report—which the court has ruled is substantively time barred—and to matters unrelated to this case." Id. at 14.

In a memorandum opinion entered on June 4, 2019, the court examined Patel's amended petition and each of the bases upon which he asserted that the facts underlying his Brady claim were not discoverable until 2017. Mem. Op., ECF No. 918. The court concluded:

> In sum, while Patel had a credible claim that the 2013 OIG Report and the underlying investigation should have been subject to Brady disclosure during his prosecution and before he entered his guilty plea and was sentenced, he waited too long to bring it. Nothing about the 2017 materials referenced in his amended petition gives rise to a Brady claim that is not already time barred. ATF Director Brandon's testimony does nothing more than bless the 2013 OIG Report; the New York Times reporting on the Big South Wholesale case and the deposition taken of ATF agent Lesnak provide no source for a timely Brady violation related to the Patel prosecution; and there has been no showing, other than wild conjecture, that the September 2017 OIG Investigative Summary bears on Patel's case. Because Patel's Amended Petition raises no plausible claim of a Brady violation transcending the information contained in the 2013 OIG Report, it must be DISMISSED as untimely.

ECF No. 918, at 10.

Patel appealed the dismissal of his Amended 2255 Petition, and the appeal was dismissed by the Fourth Circuit Court of Appeals on May 20, 2020. Mem. Op., ECF No. 932.

### D. Rule 60(b) Motion.

While Patel's appeal of the dismissal of his Initial 2255 Petition was pending, he filed a pro se motion under Federal Rule of Civil Procedure 60(b), claiming actual innocence because the cigarettes in his case fell outside of the statutory definition of contraband cigarettes. Rule 60(b) Mot., ECF No. 923. On September 2, 2020, the court dismissed Patel's Rule 60(b) pro se motion as a second or successive 2255 petition lacking certification from the Fourth Circuit Court of Appeals. Mem. Op., ECF No. 935.

### E. Coram Nobis Petition.

Less than two months later, on October 27, 2020, Patel, by counsel, filed a Petition for Writ of Error Coram Nobis, ECF No. 941, raising the same actual innocence claim and adding that his trial counsel was ineffective for not recognizing that South Carolina law did not require cigarettes sold there to bear tax stamps. By memorandum opinion dated April 5, 2021, the court denied Patel's motion for a coram nobis writ, finding that his claims of actual innocence and ineffective assistance of counsel are properly raised through a 2255 petition. Mem. Op., ECF No. 953. Patel's counsel subsequently filed a motion to reconsider the denial of the coram nobis petition, ECF No. 955, and Patel filed a pro se Rule 60(b) motion, arguing that the court's order denying his earlier Rule 60(b) motion was in error. ECF No. 956. The court denied both these motions on December 13, 2021, reasoning that Patel

must first seek certification from the Fourth Circuit before it can consider his actual innocence and ineffective assistance claims. Mem. Op., ECF No. 960.

On May 23, 2024, the Fourth Circuit affirmed the judgment of the district court, finding no abuse of discretion in the denial of the coram nobis and Rule 60(b) motions. Per Curiam Op., ECF No. 978.

## II.

On December 4, 2024, Patel, by counsel, filed the pending motion for relief under Rule 60(d)(3), contending that the government engaged in fraud on the court in responding to the Amended 2255 Petition. The motion states: "Patel submits that the Government perpetrated a fraud on the Court by knowingly misleading the Court, providing false responses to Patel's Petition, and hiding information in an effort to avoid affecting the results in multiple prosecutions." Rule 60(d)(3) Mot., ECF No. 989, ¶ 14. In the memorandum filed in support of the Rule 60(d)(3) motion, Patel claims that certain assertions made in two government pleadings filed a year apart, Gov't Resp., ECF No. 894 (filed Feb. 16, 2018), and Gov't Mot. to Dismiss, ECF No. 913 (filed Mar. 27, 2019), constitute fraud on the court. Patel claims that the government's denial of a connection between the Brandon and Lesnak testimony and Patel's investigation constitutes fraud on the court. Patel also claims that the government's denial that Lesnak was involved in an unauthorized investigation constitutes fraud on the court. See Mem. in Support of Rule 60(d)(3) Mot., ECF No. 989-1, at 5-6.[8]

---

[8] Patel explains why it took him until December 2024 to file his Rule 60(d)(3) motion as follows: "When the Government recently contacted Patel about its intent to amend its Forfeiture Order, he channeled his displeasure into motivation to investigate his prosecution. As a result, he reviewed his docket in this case, many of its filings, and the New York Times articles. Patel also searched for information regarding the agents

The government moved to dismiss the Rule 60(d)(3) motion, arguing that the court lacked jurisdiction because Patel's claim was moot. Mot. to Dismiss, ECF No. 995. The government further moved "to suspend briefing on the substantive merits of Patel's claim pending resolution of this Court's jurisdiction." Id. at 1. The government's mootness argument is straightforward. Because Patel has completed his sentence of incarceration and term of supervised release, "[h]e is no longer 'in custody' within the meaning of § 2255." Id. at 4. Thus, "[h]is efforts to obtain reconsideration of this Court's § 2255 decision must be denied as moot." Id.

In response, Patel argued that Patel's completion of his incarceration and term of supervised release did not moot his Rule 60(d)(3) claim because (1) a claim of fraud on the court provides an independent jurisdictional basis for the court to entertain his motion; and (2) Patel's habeas petition is not moot because of collateral consequences from his conviction, including a $400,000 money judgment, $600 mandatory special assessment, inability to obtain a South Carolina lottery license, and other impediments. Resp. to Mot. to Dismiss, ECF No. 996.

The court agrees with Patel that his Rule 60(d)(3) claim may not be dismissed at this stage as moot simply because he completed his term of incarceration and supervised release. Both the Supreme Court and Fourth Circuit recognize that under certain circumstances the collateral consequences of a conviction may require a court to address further a habeas

---

and individuals involved in his case and discussed them in those articles. Patel found a public website that revealed the existence of U.S. Tobacco II, which led him to look into whether he could access the U.S. Tobacco I files online." Id. at 11.

claim. In Spencer v. Kemna, 523 U.S. 1 (1998), the Court outlined the collateral consequences doctrine:

> An incarcerated convict's (or a parolee's) challenge to the validity of his conviction always satisfies the case-or-controversy requirement, because the incarceration (or the restriction imposed by the terms of the parole) constitutes a concrete injury, caused by the conviction and redressable by invalidation of the conviction. Once the convict's sentence has expired, however, some concrete and continuing injury other than the now-ended incarceration or parole—some "collateral consequence" of the conviction—must exist if the suit is to be maintained. In recent decades, we have been willing to presume that a wrongful criminal conviction has continuing collateral consequences (or, what is effectively the same, to count collateral consequences that are remote and unlikely to occur).

Id. at 7-8 (citation omitted).

In Carafas v. La Vallee, 391 U.S. 234, 237 (1968), the Court held that certain disabilities or burdens which may flow from a petitioner's conviction give him a "substantial stake in the judgment of conviction which survives the satisfaction of the sentence imposed." Because of these collateral consequences, the case was not moot. The disabilities the Court was considering included being unable to engage in certain businesses, serve as an official of a labor union, vote in any New York state election, or serve as a juror.

The Court has applied the collateral consequences doctrine in a number of other cases. See Pollard v. United States, 352 U.S. 354, 358 (1957) ("The possibility of consequences collateral to the imposition of sentence is sufficiently substantial to justify our dealing with the merits."); Sibron v. New York, 392 U.S. 40, 57-58 (1968) ("a criminal case is moot only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction."); Fiswick v. United States, 329 U.S.

211, 222 (1946) ("An outstanding judgment of conviction for this crime stands as ominous proof that he did what was charged and puts beyond his reach any showing of ameliorating circumstances or explanatory matter that might remove part or all of the curse. And even though he succeeded in being naturalized, he would, unless pardoned, carry through life the disability of a felon; and by reason of that fact he might lose certain civil rights. Thus Fiswick has a substantial stake in the judgment of conviction which survives the satisfaction of the sentence imposed upon him. In no practical sense, therefore, can Fiswick's case be said to be moot."); United States v. Morgan, 346 U.S. 502, 512-13 (1954) ("Although the term has been served, the results of the conviction may persist. Subsequent convictions may carry heavier penalties, civil rights may be affected. As the power to remedy an invalid sentence exists, we think respondent is entitled to an opportunity to attempt to show that his conviction was invalid."); Evitts v. Lucey, 469 U.S. 387, 391 n.4 (1985) ("However, respondent has not been pardoned and some collateral consequences of his conviction remain, including the possibility that the conviction would be used to impeach testimony he might give in a future proceeding and the possibility that it would be used to subject him to persistent felony offender prosecution if he should go to trial on any other felony charges in the future. This case is thus not moot.").

In his reply to the government's motion to dismiss, Patel identifies a few collateral consequences stemming from his conviction, including the $600 mandatory special assessment and a $400,000 money judgment. Patel argues that if his "habeas action is successful, the assessment will presumably be refunded and the money judgment extinguished." Resp. to Mot. to Dismiss, ECF No. 996, at 7. Patel also cites his loss of civil

rights associated with his felony conviction, the possibility of increased penalties from future convictions, and his inability to participate in the convenience store business because his South Carolina lottery license was revoked. [9] Id. at 7-8.

"A possible refund of a fine has also been held a collateral consequence constituting a sufficient stake in the outcome to prevent mootness." Nakell v. Attorney General of North Carolina, 15 F.3d 319, 322 (4th Cir. 1994). In Nakell, a lawyer convicted of contempt served a ten-day sentence and was fined $500. The lawyer was unconditionally released from custody after serving his ten-day sentence, raising the issue of whether his subsequent petition for habeas corpus was moot. The Fourth Circuit held that "Nakell's interest in the return of the $500 fine is a collateral consequence sufficient to prevent mootness." Id. The court also noted that the possibility of a revived state bar disciplinary proceeding "serves as an additional collateral consequence preventing mootness." Id. at 323. As in Nakell, the alleged ongoing financial consequences of Patel's conviction are sufficient to state a plausible claim that his habeas petition is not moot.

But, of course, a determination that Patel's claim is not moot does not mean that it is otherwise viable, even as pled. There is a substantial question as to whether Patel's allegations of the government's alleged denials and assertions in its written submissions, ECF Nos. 894 and 913, filed in response to Patel's Amended 2255 Petition, meet the "very high bar" sufficient to state a Rule 60(d)(3) claim. Fox ex rel. Fox v. Elk Run Coal Co., 739 F.3d 131, 137 (4th Cir. 2014); Great Coastal Express, Inc. v. Int'l Brotherhood of Teamsters,

---

[9] At the pleading stage, of course, the court is not tasked with determining whether Patel's alleged collateral consequences have evidentiary support. It is worth noting, however, that Patel attempted to justify the timing of his Rule 60(d)(3) motion on the basis that "the Government recently contacted Patel about its intent to amend its Forfeiture Order," Mem. in Support of Rule 60(d)(3) Mot., ECF No. 989-1, at 11, supporting his allegation that there are continuing financial consequences stemming from his conviction.

12

675 F.2d 1349, 1356 (4th Cir. 1982)("Thus 'fraud on the court' is typically confined to the most egregious cases, such as bribery of a judge or juror, or improper influence exerted on the court by an attorney, in which the integrity of the court and its ability to function impartially is directly impinged."). Further, given how long Patel waited to file his Rule 60(d)(3) motion, timeliness concerns linger.

### III.

For these reasons, the court will **DENY** the government's motion to dismiss Patel's Rule 60(d)(3) motion as moot. ECF No. 995. The court believes that additional briefing is necessary to assess the legal sufficiency of Patel's Rule 60(d)(3) motion. Accordingly, the court **DIRECTS** the government to file a supplemental motion to dismiss and supporting memorandum of law addressing: (1) whether Patel's Rule 60(d)(3) motion is sufficient as a matter of law to state a plausible claim for fraud on the court, (2) whether it is otherwise timely, and (3) any other basis for dismissal of the motion. The government is **DIRECTED** to file its supplemental motion to dismiss and supporting memorandum of law within ninety (90) days; Patel may respond within sixty (60) days of the government's filing; and the government may reply within thirty (30) days of Patel's response.[10] Should the court determine that a hearing is necessary to resolve the issues raised, it will so inform the parties.

An appropriate Order will be entered this day.

---

[10] While the court encourages the parties to docket their filings in advance of these deadlines, the court believes it to be prudent to provide the parties with ample time to address these issues in light of the calendar and the ongoing government shutdown.

Entered: November 3, 2025

Michael F. Urbanski
Senior United States District Judge