CLERKS OFFICE US DISTRICT COURT
AT HARRISONBURG, VA
FILED

04/28/2026

LAURA A. AUSTIN, CLERK
BY: **/s/ Amy Fansler**
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION**

| | | |
|---|---|---|
| **ANJAY PATEL,** | ) | **Criminal Action No. 5:11-CR-00031** |
| **Petitioner,** | ) | |
| **v.** | ) | |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | By: **Michael F. Urbanski** |
| **Respondent.** | ) | **Senior United States District Judge** |

**MEMORANDUM OPINION**

This matter is before the court on the Motion for Relief Under Rule 60(d)(3) filed by petitioner Anjay Patel, ECF No. 989, and the Opposition to Petitioner's Rule 60(d)(3) Motion and Renewed Motion to Dismiss filed by the United States, ECF No. 1005.

On November 4, 2025, the court entered a Memorandum Opinion and Order denying the government's motion to dismiss Patel's Rule 60(d)(3) motion as moot and directing supplemental briefing.  ECF Nos. 997 and 998. The government filed its Opposition to Petitioner's Rule 60(d)(3) Motion and Renewed Motion to Dismiss on February 2, 2026, the date set by the court in the November 4, 2025, Order. Patel has not filed a response to the government's renewed motion to dismiss within the time set by the court.[1]

Following review of the substance of Patel's Rule 60(d)(3) motion and the government's renewed motion to dismiss, the court concludes that Patel's motion falls short of the high threshold required to state a claim for fraud on the court under Rule 60(d)(3).  As such it is **DENIED**. To the extent that Patel's motion is construed as a motion under Rule 60(b)(3), it is untimely. Finally, Patel's motion may not proceed as a second or successive

---

[1] Patel's response was due sixty (60) days from the government's filing, April 3, 2026.

petition under 28 U.S.C. § 2255 as it lacks certification from the Fourth Circuit Court of Appeals.

## I.

The court will trace the procedural history of this case before addressing Patel's Rule 60(d)(3) fraud on the court motion. Rule 60(d)(3) Mot., ECF No. 989. [2]

### A. Prosecution, Guilty Plea, and Sentencing.

In 2011, Anjay Patel and others were named in a multi-count indictment charging conspiracy to traffic in contraband cigarettes, money laundering, and a variety of related crimes. Indictment, ECF No. 3.  On February 13, 2023, after substantial prejudgment forfeiture proceedings, Patel pled guilty to six felony counts pursuant to a written plea agreement.  Plea Agreement, ECF No. 490. Patel was sentenced on August 14, 2013, to 84 months imprisonment, 2 years supervised release, and $2.6 million in restitution. ECF No. 625. The judgment was entered on August 29, 2013, J., ECF No. 654, and Patel reported for service of his sentence to FCI Edgefield on October 29, 2013. ECF No. 701. Patel was represented by retained counsel throughout his case and did not appeal.[3]

### B. Initial § 2255 Petition.

---

[2] For ease of reference and consistency purposes, the court repeats the substance of § I of the November 4, 2025, Memorandum Opinion, tracing the procedural history of this case to that point.

[3] Retained counsel was actively involved in Patel's case even after he reported for service of his sentence. Litigation on the issue of forfeiture of substitute assets continued even after Patel was incarcerated.  The court held a hearing on November 26, 2013, with Patel's counsel present, ECF No. 714, and the court entered an Amended Order of Forfeiture as to Substitute Property on December 6, 2013. ECF No. 717. The last docket entry involving retained counsel was on May 1, 2014, when counsel filed a transcript request. ECF No. 773. The reason why the involvement of retained counsel following sentencing is important in this case is that the report of the Department of Justice Office of Inspector General from which Patel's habeas claims springs was issued and reported on in The Washington Post on September 25, 2013, while Patel's retained counsel was actively involved in his case.

More than three years later, on March 30, 2017, Patel filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255. Initial § 2255 Petition, ECF No. 871.  Patel's Initial § 2255 Petition, filed by new counsel, raised two grounds.

First, Patel brought a claim under the Sixth Amendment asserting that the court's 2013 ruling denying release of forfeited substitute assets to pay his retained counsel was called into question by the 2016 Supreme Court decision in Luis v. United States, 578 U.S. 5 (2016). As to that claim, the court ruled that "[b]oth because Luis does not have retroactive application on collateral review and because Patel had access to funds to pay his counsel sufficient funds to defend this case, Patel's Sixth Amendment claim must be denied." Mem. Op., ECF No. 899, at 16.

Patel's second claim alleged a violation of the government's discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963), for failing to disclose a U.S. Department of Justice Office of Inspector General (OIG) investigation resulting in a September 2013 Audit Report entitled *Audit of the Bureau of Alcohol, Tobacco, Firearms and Explosives' Use of Income-Generating, Undercover Operations* ("2013 OIG Report").[4] The 2013 OIG Report was the subject of an article published in The Washington Post on September 25, 2013.[5] Although the 2013 OIG Report was issued and reported on in the national media in 2013, Patel did not file his Brady violation claim until March 30, 2017, more than three years later. The court found his 2017 petition untimely, finding that "it cannot be said that Patel exercised

---

[4] This Audit Report is Exhibit B to Patel's Memorandum in Support of § 2255 Petition, ECF No. 871, at 37.

[5] Sari Horwitz, *ATF Lost Track of 2.1 Million Cartons of Cigarettes in Sting Operations, Report Finds*, Wash. Post, Sept. 25, 2013, ECF No. 871, at 3 n.2.

reasonable diligence to discover his <u>Brady</u> claim based on the 2013 OIG Report." Mem. Op., ECF No. 899, at 18.

**C. Amended § 2255 Petition.**

During the pendency of his Initial § 2255 Petition, Patel's habeas counsel wrote a letter to the court claiming that since the time he filed his petition, additional claimed improprieties surrounding the use of an ATF management account associated with Big South Wholesale tobacco warehouse in Bristol, Virginia had surfaced. Shon Hopwood Letter, ECF No. 893.[6]

The government responded to the January 18, 2018, letter from Patel's habeas counsel in a brief dated February 16, 2018. Gov't Resp., ECF No. 894. In this brief, the government argues that the new allegations raised in the letter are procedurally or time barred. Only one line in the government's brief appears to address the merits of the new claims, as follows: "In fact, Patel's alleged facts have essentially nothing to do with supporting his <u>Brady</u> claim, because they do not demonstrate that the OIG report, or any of the conduct it recites, relates to his particular case." Gov't Resp., ECF No. 894, at 11.

Given that the issues raised in the Hopwood letter came to light following New York Times reporting in September 2017, which was after Patel filed his Initial § 2255 Petition on March 30, 2017, the court granted Patel "leave to amend his § 2255 petition to allege <u>Brady</u> violations, if any, that transcend the issues raised in the 2013 OIG Report." Mem. Op., ECF No. 899, at 19. By Order dated December 13, 2018, Patel was "granted leave of court to amend his petition within thirty (30) days to claim a <u>Brady</u> violation based on the 2017

---

[6] Hopwood's letter was dated January 18, 2017, but was docketed on January 18, 2018. ECF No. 893. Plainly, January 18, 2018, is the correct date as the letter refers to Patel's Initial § 2255 Petition filed in March 2017.

revelation of claimed ATF misuse, in connection with its undercover cigarette operations, of a management account at the Big South tobacco warehouse in Bristol, Virginia." Order, ECF No. 900.

Patel did not comply with the thirty-day time limit in the December 13, 2018, Order, instead filing an amended petition on February 25, 2019. In his amended petition, Patel argues that "the factual predicate for his claim was not discoverable until 2017, rather than 2013 at the time OIG released its report." Amended § 2255 Petition, ECF No. 907, at 3. Patel based this argument on four sources of information:

(A) Testimony of ATF Acting Director Thomas Brandon at a hearing conducted by the Committee on Oversight and Government Reform, U.S. House of Representatives, on March 9, 2017, captioned Reviewing ATF's Failures in the Death of ICE Agent Jaime Zapata;[7]

(B) A New York Times article by Matt Apuzzo dated September 8, 2017, entitled *I Smell Cash: How the ATF Spent Millions Unchecked*;[8]

(C) A deposition of former ATF Special Agent Thomas P. Lesnak in a civil fraud case pending in North Carolina;[9] and

(D) A September 14, 2017, U.S. Department of Justice Office of Inspector General Investigative Summary entitled *Findings Concerning Misconduct by an Alcohol, Tobacco, Firearms,*

---

[7] Reviewing ATF's Failures in the Death of ICE Agent Jaime Zapata: Hearing Before the Comm. On Oversight and Gov't Reform of the House, 115th Cong. Ser. No. 115-18, at 15 (2017), http://www.fdsys.gov, http://oversight.house.gov.

[8] The New York Times September 8, 2017, article is available at https://www.nytimes.com/2017/09/08/us/atf-tobacco-cigarettes.html.

[9] Lesnak's deposition was taken in U.S. Tobacco Cooperative, Inc., et al v. Big South Wholesale of Virginia, LLC et al d/b/a Big Sky International, et al, No. 5:13-cv-00527-F (E.D.N.C.), on March 22, 2016, but was not publicly released until it was linked to the Sept. 8, 2017, New York Times article. Lesnak's deposition is docketed in this case as Exhibit 2 to the government's motion to dismiss Patel's amended petition. ECF No. 913-2.

*and Explosives (ATF) Resident Agent in Charge for Multiple Failures in the Management of an Operation, and by an Assistant U.S. Attorney for Having an Inappropriate Relationship With an ATF Agent and Violating Professional Responsibilities* ("2017 OIG Investigative Summary").[10]

The government filed a motion to dismiss the Amended § 2255 Petition on March 27, 2019. Gov't Mot. to Dismiss, ECF No. 913. In its motion, the government argued that the issues raised in Patel's Amended § 2255 Petition did not transcend the issues raised in the 2013 OIG Report and did not meet the court's requirements for the amendment. The motion also asserted that "Patel's 'new' allegations of connections to the 2013 OIG report are factually baseless, and fail to show any connection to the investigation into his criminal conduct." Id. at 9.  In a footnote on page 9 of the motion, the government disagrees with Patel that his investigation was the "Operation Alpha" referenced in the 2013 OIG Report based on the dollar figure and number of cigarette cartons specifically alleged in Patel's indictment. Id. at 9 n.5.  The government concluded that "[a]s such, the investigation into Patel's cigarette trafficking scheme is plainly not the 'Operation Alpha' referred to in the 2013 OIG report, and Patel has pointed to no other evidence to suggest otherwise." Id. The government's motion also stated that "[n]either the Brandon nor Lesnak testimony or the 2017 Summary mention Patel." Id. at 10. Citing to multiple pages of Lesnak's deposition testimony, the government asserted that "Lesnak was not part of an unauthorized operation," and that "Lesnak's substantive testimony relates to the 2013 OIG report—which the court has ruled is substantively time barred—and to matters unrelated to this case." Id. at 14.

---

[10] The 2017 Investigative Summary is docketed as Exhibit 1 to the government's motion to dismiss Patel's amended petition. ECF No. 913-1.

On April 19, 2019, Patel, by counsel, filed a response to the government's motion to dismiss, taking issue with the government's brief and disagreeing that Patel's claims were time barred.  Resp. to Government's Motion to Dismiss Patel's Amended 28 U.S.C. § 2255, ECF No. 916. Patel's response addressed the government's arguments that his Initial § 2255 Petition was untimely as it was filed in March 2017, more than three years after the public airing of the 2013 OIG Report, stating:

> It wasn't until years after the OIG Report was published that Agent Lesnak and Director Brandon did an about-face by acknowledging flaws ATF documented in 2013. Flaws, coincidentally, which undermine ATF's cigarette calculations in Patel's case. These subsequent admissions also confirm earlier allegations by OIG that certain operations such as Patel's were unauthorized because ATF failed to seek prior approval before initiating the investigation.

Id. at 8.  Patel disagreed with the government's argument that neither Lesnak's nor Brandon's testimony referred to his investigation, contending that "[g]overnment officials have omitted specifics relating to this investigation since it began more than seven years ago and continue to do so even now." Id. at 9.  Patel argued that it was not his "burden to show that the ATF problems were related to his case; it is the government's burden, under established principles of civil procedure, to show that the problems with the ATF investigation did not include the investigation and ultimate charges brought against Patel." Id.  Patel's response "steadfastly maintain[ed]" his cigarette and dollar figures established that his investigation was the Operation Alpha mentioned in the 2013 OIG Report. Id. at 10.

In a memorandum opinion entered on June 4, 2019, the court examined Patel's amended petition and each of the bases upon which he asserted that the facts underlying his

7

Brady claim were not discoverable until 2017. Mem. Op., ECF No. 918.   The court concluded:

> In sum, while Patel had a credible claim that the 2013 OIG Report and the underlying investigation should have been subject to Brady disclosure during his prosecution and before he entered his guilty plea and was sentenced, he waited too long to bring it.  Nothing about the 2017 materials referenced in his amended petition gives rise to a Brady claim that is not already time barred. ATF Director Brandon's testimony does nothing more than bless the 2013 OIG Report; the New York Times reporting on the Big South Wholesale case and the deposition taken of ATF agent Lesnak provide no source for a timely Brady violation related to the Patel prosecution; and there has been no showing, other than wild conjecture, that the September 2017 OIG Investigative Summary bears on Patel's case.  Because Patel's Amended Petition raises no plausible claim of a Brady violation transcending the information contained in the 2013 OIG Report, it must be **DISMISSED** as untimely.

ECF No. 918, at 10.

Patel appealed the dismissal of his Amended § 2255 Petition, and the appeal was dismissed by the Fourth Circuit Court of Appeals on May 20, 2020. Mem. Op., ECF No. 932.

**D. Rule 60(b) Motion.**

While Patel's appeal of the dismissal of his Initial § 2255 Petition was pending, he filed a pro se motion under Federal Rule of Civil Procedure 60(b), claiming actual innocence because the cigarettes in his case fell outside of the statutory definition of contraband cigarettes. Rule 60(b) Mot., ECF No. 923.[11]  On September 2, 2020, the court dismissed

---

[11] On the same day that Patel filed his Rule 60(b) motion, August 2, 2019, he filed a notice of appeal as to the dismissal of his Amended § 2255 Petition. Notice of Appeal, ECF No. 924.

Patel's Rule 60(b) pro se motion as a second or successive § 2255 petition lacking certification from the Fourth Circuit Court of Appeals. Mem. Op., ECF No. 935.

**E. Coram Nobis Petition.**

Less than two months later, on October 27, 2020, Patel, by counsel, filed a Petition for Writ of Error Coram Nobis, ECF No. 941, raising the same actual innocence claim and adding that his trial counsel was ineffective for not recognizing that South Carolina law did not require cigarettes sold there to bear tax stamps. By memorandum opinion dated April 5, 2021, the court denied Patel's motion for a coram nobis writ, finding that his claims of actual innocence and ineffective assistance of counsel are properly raised through a § 2255 petition. Mem. Op., ECF No. 953. Patel's counsel subsequently filed a motion to reconsider the denial of the coram nobis petition, ECF No. 955, and Patel filed a pro se Rule 60(b) motion, arguing that the court's order denying his earlier Rule 60(b) motion was in error. ECF No. 956. The court denied both these motions on December 13, 2021, reasoning that Patel must first seek certification from the Fourth Circuit before it can consider his actual innocence and ineffective assistance claims. Mem. Op., ECF No. 960.

On May 23, 2024, the Fourth Circuit affirmed the judgment of the district court, finding no abuse of discretion in the denial of the coram nobis and Rule 60(b) motions. Per Curiam Op., ECF No. 978.

## II.

On December 4, 2024, Patel, by counsel, filed the pending motion for relief under Rule 60(d)(3), contending that the government engaged in fraud on the court in responding to the January 18, 2018, Hopwood letter and the Amended § 2255 Petition. The motion

9

states: "Patel submits that the Government perpetrated a fraud on the Court by knowingly misleading the Court, providing false responses to Patel's Petition, and hiding information in an effort to avoid affecting the results in multiple prosecutions." Rule 60(d)(3) Mot., ECF No. 989, ¶ 14.  In the memorandum filed in support of the Rule 60(d)(3) motion, Patel claims that certain assertions made in two government pleadings filed a year apart, Gov't Resp., ECF No. 894 (filed Feb. 16, 2018), and Gov't Mot. to Dismiss, ECF No. 913 (filed Mar. 27, 2019), constitute fraud on the court. Patel claims that the government's denial of a connection between the Brandon and Lesnak testimony and Patel's investigation constitutes fraud on the court. Patel also claims that the government's denial that Lesnak was involved in an unauthorized investigation constitutes fraud on the court. See Mem. in Support of Rule 60(d)(3) Mot., ECF No. 989-1, at 5-6.[12]

The government moved to dismiss the Rule 60(d)(3) motion, arguing that the court lacked jurisdiction because Patel's claim was moot. Mot. to Dismiss, ECF No. 995.  In its November 4, 2025, Memorandum Opinion, the court denied the government's request to dismiss Patel's Rule 60(d)(3) claim as moot. As required by the Order entered on November 4, 2025, the government filed a substantive opposition and renewed motion to dismiss on February 2, 2026.  ECF No. 1005. Patel has not filed a response to the government's renewed motion to dismiss and the time for doing so set forth in the November 4, 2025, Order has passed.

---

[12] Patel explains why it took him until December 2024 to file his Rule 60(d)(3) motion as follows: "When the Government recently contacted Patel about its intent to amend its Forfeiture Order, he channeled his displeasure into motivation to investigate his prosecution. As a result, he reviewed his docket in this case, many of its filings, and the New York Times articles. Patel also searched for information regarding the agents and individuals involved in his case and discussed them in those articles. Patel found a public website that revealed the existence of U.S. Tobacco II, which led him to look into whether he could access the U.S. Tobacco I files online." Id. at 11.

## III.

A.  Patel's Allegations of Fraud on the Court.

Patel alleges fraud on the court based on responses made by counsel for the United States to two documents filed on Patel's behalf.  Those documents are (1) a January 18, 2028, letter to the court from Patel's then habeas counsel Shon Hopwood, ECF No. 893, and (2) Patel's Amended § 2255 Petition, ECF No. 907, filed on February 25, 2019. In large measure, Patel alleges that the government engaged in fraud on the court by making certain statements in its pleadings seeking dismissal of his § 2255 Petition.

1.  Government's Response to the Hopwood Letter.

In his January 2018 letter, Hopwood asserted that new facts had come to light regarding the ATF's contraband cigarette trafficking operations from 2017 New York Times reporting and a 2016 deposition of Thomas Lesnak, a retired ATF agent, in a federal civil fraud case – U.S. Tobacco I –  pending in North Carolina.[13] The government responded to Hopwood's letter in a pleading filed on February 16, 2018, asserting generally that the new allegations are procedurally or time barred. Patel's Memorandum in Support of his Rule 60(d)(3) motion references the government's response to Hopwood's letter twice.

- On page 5, Patel states: "In response to Patel's letter, the Government claimed that Patel's new facts and allegations were not 'facts' at all. ECF No. 894." Mem. in Supp. of Rule 60(d)(3) Mot., ECF No. 989-1, at 5.

- On page 26, Patel states: "On February 16, 2018, long before information in U.S. Tobacco I was unsealed, the Government responded to Patel's letter to

---

[13] See U.S. Tobacco Coop. Inc. v. Big South Wholesale of Virginia, LLC, 899 F.3d 236 (4th Cir. 2018).

the Court (ECF No. 893) by stating that Patel's allegations did not support his

claim and that the new facts did not relate to his case. ECF No. 894." Mem. in

Supp. of Rule 60(d)(3) Mot., ECF No. 989-1, at 26.

2.   <u>Government's Motion to Dismiss the Amended § 2255 Petition.</u>

Patel also claims that certain statements made by the government in its Motion to

Dismiss Patel's Amended § 2255 Petition, ECF No. 913, constitute fraud on the court.

Patel's Memorandum in Support of Rule 60(d)(3) Motion states:

> In its Response to the Amended Petition, the Government claimed that the testimony of Acting Director Brandon did not involve facts that related to Patel's investigation. ECF No. 913. The Government further described Patel's allegations as "bold, baseless" and "factually baseless" and claimed that nothing in Lesnak's testimony about ATF misconduct involved Patel's investigation. ECF No. 913.
>
> The Government denied Patel's allegations, including that the information used to prosecute and sentence him was "unreliable,"; that the "government did not monitor the investigation properly,"; that due to the irregularities in the investigation the government "could not determine the number of cigarettes or money involved in the case"; and that the nature and scope of ATF's misconduct" impacted Patel's investigation and prosecution. <u>See</u> ECF No. 913, at 4. The government claimed that Patel did not draw a "factual connection between the investigation into Patel's criminal conduct and the civil suit that involved the Big South tobacco warehouse." ECF No. 913, at 8.
>
> The Government responded to Patel's specific claims about Special Agent Lesnak's prior misconduct and his role in Patel's case by affirmatively stating that "Lesnak was not part of an unauthorized operation." ECF No. 913. In an effort to minimize the significance of Lesnak's deposition, the government claimed that "Lesnak's substantive testimony relates to the 2013 OIG report . . . and to matters unrelated to this case." ECF No. 913.

Mem. in Supp. of Rule 60(d)(3) Mot., ECF No. 989-1, at 5-6.

Patel summarized the impact of the government's denials of wrongdoing with regard to his contraband cigarette investigation as follows:

> Faced with Patel's attack on his conviction and forfeiture action, the Government doubled down and deceived the Court (and Patel) yet again by claiming that Patel's case was not tied to the use of the Management Account, the reporting in the New York Times Articles, or U.S. Tobacco I, and that Lesnak was not involved in an unauthorized investigation. The Government made these representations despite the fact that, when they were made, the Government possessed all of the information Patel relies upon in this Memorandum.  By wrongfully claiming that Patel's allegations had no basis in fact and stating that the new information was unrelated to Patel's case, the Government deceived the Court and assured the dismissal of the Amended Petition based on the statute of limitations.

Id. at 23-24 (internal citation omitted).

B.  Government's Opposition and Renewed Motion to Dismiss.

The government argues that Patel's "December 2024 motion overshot the deadline for any fraud-based Rule 60(b)(3) claim by several *years*," United States's Opp. To Pet'r's Rule 60(d)(3) Mot. and Renewed Mot. to Dismiss, ECF No. 1005, at 10, ("Renewed Mot. to Dismiss"), and that the materials from the U.S. Tobacco litigation he relies on to support his claim of fraud on the court were unsealed and publicly available before Patel filed his amended petition. Id. The government's Renewed Motion to Dismiss points out the difficulty in parsing Patel's fraud on the court allegations.

> Before turning to particular statements in the government's prior filings, the government notes that it is often difficult to discern precisely what conduct or representation Mr. Patel is relying on for his claims here. Many allegations lack cites, while for others, the citations don't seem to support the underlying allegation. And it bears noting that there are relatively few

13

affirmative factual pronouncements in the government's prior oppositions. Much of the briefs simply pointed out how Mr. Patel allegations were untimely or he had failed to carry his burden, see generally Dkt Nos. 894 and 913—representations that don't exactly provide much grist for a fraud claim, much less the sort of system-destabilizing conduct necessary to show fraud on the court.

Renewed Mot. to Dismiss, ECF No. 1005, at 11-12.   Nevertheless, the government's response addressed Patel's claimed misrepresentations concerning (1) Lesnak's testimony; (2) Brandon's testimony; (3) Operation Alpha; (4) Big South Tobacco Warehouse; and (4) the 2017 OIG Summary.

The court will outline each of these claimed misrepresentations.

C. Patel's Specific Allegations of Fraud on the Court.

1. Agent Lesnak's Testimony.

Patel claims that the government engaged in fraud on the court by stating that ATF Agent Lesnak was not part of an unauthorized operation and by challenging Patel's assertion of a connection between Agent Lesnak and Patel's investigation.  The government's specific statements are as follows:

- "Lesnak was not part of an unauthorized operation. Lesnak Deposition at 22, 28, 51-52, 55. Furthermore, Lesnak's substantive testimony relates to the 2013 OIG report—which the Court has ruled is substantively time barred—and to matters unrelated to this case. Lesnak Deposition at 5, 44, 46, 79, 80, 82, 89, 90, 94, 97, 99, 100, 121, 262, 296, 297, 313, 314, 315, 316, 317, 334, 336, 341, 341." Gov't Mot. to Dismiss Amended § 2255 Petition, ECF No. 913, at 14.

2. Acting Director Brandon's Testimony.

Patel claims fraud on the court based on the government's claim that Acting Director Brandon's testimony does not mention Patel.  The government's specific statements are as follows:

14

- "An additional impediment to Patel's argument is that Brandon's testimony does not appear to contain any references to the investigation of Patel's criminal conduct, much less, a reference supporting Patel's *Brady* claims as required by § 2255(f)(4). Patel points to Brandon's testimony to argue that the investigation of his criminal conduct was illegal but he never explains how. Referencing Brandon's testimony, Patel claims that ATF's accounting of the number of cigarettes he sold, and the amount of money he made from doing so, was not accurate. However, as the leader of his criminal enterprise, Patel sold the contraband cigarettes and made the money in question. Since before he pleaded guilty, Patel has known how many cigarettes he sold and how much money he made and that personal knowledge would have formed the basis for any challenge to the accuracy of the accounting, not Brandon's testimony about broad practices." Gov't Mot. to Dismiss Amended § 2255 Petition, ECF No. 913, at 13.

### 3. Operation Alpha.

Since he learned of the 2013 OIG Report, Patel has believed that his investigation was referred to in that report as Operation Alpha. The government has asserted that Patel's claim that his investigation was Operation Alpha is speculative. Patel claims that the government's challenge to his assertion that his investigation was referred to in the 2013 OIG Report as Operation Alpha is fraud on the court. The specific government statements are as follows:

- "Patel makes the purely speculative claim that references in the 2013 OIG report to Operation Alpha are references to the investigation of Patel. Patel again argues that the 2013 OIG report, which doesn't mention Patel, concluded that ATF's calculations were unreliable and that figures utilized during 'these' operations could not be reconciled." Gov't Mot. to Dismiss Amended § 2255 Petition, ECF No. 913, at 8-9 (internal citation omitted).

- "Patel previously argued, without any basis in fact, that 'Operation Alpha,' referred to in the 2013 OIG report is the investigation of his criminal conduct. . . . Patel's 'new' allegations of connection to the 2013 OIG report are factually baseless, and fail to show any connection to the investigation into his criminal conduct. All of Patel's arguments that relate back to the 2013 OIG report were previously dismissed by the Court and should be dismissed again." Gov't Mot. to Dismiss Amended § 2255 Petition, ECF No. 913, at 9-10 (internal citation omitted).

15

- "Patel's reliance on the assertion that 'Operation Alpha' involved the same investigation into his criminal conduct is factually baseless." Gov't Mot. to Dismiss Amended § 2255 Petition, ECF No. 913, at 10.

- "As 'evidence' that the 2013 OIG report section addressing 'Operation Alpha' refers to the investigation into Patel's cigarette trafficking activities, Patel points to the amount of money ($14.9 million) involved in 'Operation Alpha,' which he alleges coincides with the amount alleged in his indictment. ECF No. 907 at 5, FN 2. This claim is factually baseless. The indictment specifically alleged that the investigation into the conspiracy with which Patel was charged involved $20,924,498.56 and 925,329 of untaxed cigarettes. ECF No. 3, at 6-7. As such, the investigation into Patel's cigarette trafficking scheme is plainly not the 'Operation Alpha' referred to in the 2013 OIG report, and Patel has pointed to no other evidence to suggest otherwise." Gov't Mot. to Dismiss Amended § 2255 Petition, ECF No. 913, at 8.

### 4. Big South Tobacco Warehouse.

Patel asserts that the government has engaged in fraud on the court by hiding a connection between his investigation and the U.S. Tobacco civil fraud litigation in which Agent Lesnak testified. The specific government statements are as follows.

- "In his amended petition, Patel makes no mention of alleged ATF misuse of a management account at the Big South tobacco warehouse in Bristol, Virginia. Further, while he points repeatedly to Lesnak's civil deposition in a matter connected to the Big South warehouse, Patel never draws any factual connection between the investigation into Patel's criminal conduct and the civil suit that involved the Big South tobacco warehouse." Gov't Mot. to Dismiss Amended § 2255 Petition, ECF No. 913, at 8 (internal citation omitted).

### 5. 2017 OIG Investigative Summary.

Patel claims that a reference in a 2017 OIG Investigative Summary to malfeasance by an agent and prosecutor concerns his case, rather than unrelated law enforcement officials in Georgia, and that the government's position that Patel's claim is speculative constitutes fraud on the court. The specific government statements are as follows:

- "Additionally, there is nothing in the summary to suggest that it relates in any way to the Patel investigation. Patel's argument that this OIG summary relates to Patel is

purely speculative. Despite Patel's argument that the 2017 OIG summary relates to the Patel investigation, a Google search suggests that the 2017 OIG summary relates to an internal investigation that took place in Georgia. . . . Patel's suggestion that the 2017 OIG summary references the Patel investigation appears speculative and unfounded." Gov't Mot. to Dismiss Amended § 2255 Petition, ECF No. 913, at 14-15.

## IV.

A motion seeking to set aside a judgment for fraud on the court under Rule 60(d)(3) is subject to a "very high bar." Fox ex rel. Fox v. Elk Run Coal Co., 739 F.3d 131, 137 (4th Cir. 2014).

The leading case on this subject is Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944). In Hazel-Atlas, a glass manufacturer sought to patent a method for pouring glass into molds known as "gob feeding." Faced with opposition from the U.S. Patent Office, Hartford officials devised a scheme for the deliberate purpose of deceiving the hostile patent office into issuing a patent. As part of the scheme, Hartford's attorney ghost wrote an article for a trade journal praising the gob feeder as a revolutionary device and had it signed by a glass union official. The "spurious publication," 322 U.S. at 241, was submitted to the patent office and the patent issued. Hartford subsequently sued Hazel for patent infringement, which the district court dismissed. On appeal, Hartford directed the Third Circuit's attention to the trade journal article, and the court of appeals reversed, quoting the article at some length. After obtaining information that the authorship of the article was fraudulent, Hazel sued to set aside the judgment. After the Third Circuit denied Hazel's request, the Supreme Court reversed, concluding that a federal court has the power to set aside a judgment based upon fraud. The Court reasoned:

> Every element of the fraud here disclosed demands the exercise of the historic power of equity to set aside fraudulently begotten judgments. This is not simply a case of a judgment obtained with the aid of a witness who, on the basis of after-discovered evidence, is believed possibly to have been guilty of perjury. Here, even if we consider nothing but Hartford's sworn admissions, we find a deliberately planned and carefully executed scheme to defraud not only the Patent Office but the Circuit Court of Appeals.

Id. at 245-46.  The Court further noted that the fraud perpetrated by Hartford transcended

the parties to the litigation.

> This matter does not concern only private parties. There are issues of great moment to the public in a patent suit. Furthermore, tampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society. Surely it cannot be that preservation of the integrity of the judicial process must always wait upon the diligence of litigants. The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud.

Id. at 246.

The Fourth Circuit applied Hazel-Atlas in Great Coastal Express, Inc. v. Int'l

Brotherhood of Teamsters, 675 F.2d 1349, 1356 (4th Cir. 1982). In that case, Great Coastal

Express brought suit against the International Brotherhood of Teamsters ("IBT") for

damages stemming from union violence and illegal secondary boycotting during a strike. The

union violence claim was dismissed by directed verdict, but the jury returned a verdict for

Great Coastal on an illegal secondary boycott claim and awarded damages.  After the Fourth

Circuit affirmed the verdict on both liability and damages, "IBT subsequently uncovered

evidence that the company itself had planned and executed several of the acts of violence

described during the suit, and petitioned the district court and [Fourth Circuit] for relief from the judgment." 675 F.2d at 1351. At a hearing held on the motion to set aside the judgment, two Great Coastal witnesses testified that part or all of their trial testimony had been false, and other evidence of fraudulent company practices was introduced. The district court denied the motion to set aside the judgment, concluding that although relief was appropriate under Rule 60(b)(3), the union had not filed its motion within the Rule's one-year time limit and that "perjury and fabricated evidence do not rise to the level of fraud on the court." Id. at 1352. The Fourth Circuit affirmed, agreeing that the concept of fraud on the court "should be construed very narrowly.  The principal concern motivating narrow construction is that the otherwise nebulous concept of 'fraud on the court' could easily overwhelm the specific provision of 60(b)(3) and its time limitation and thereby subvert the balance of equities contained in the Rule." Id. at 1356. The court explained:

> Not all fraud is "fraud on the court." 11 Wright & Miller, Federal Practice and Procedure § 2870 at 253 (1973). Thus "fraud on the court" is typically confined to the most egregious cases, such as the bribery of a judge or juror, improper influence exerted on the court by an attorney, in which the integrity of the court and its ability to function impartially is directly impinged.

Id.  The Fourth Circuit also quoted Moore's Federal Practice for a suggested formulation for considering fraud on the court:

> "Fraud upon the court" should, we believe, embrace only that species of fraud which does or attempts to defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication.  Fraud inter partes, without more, should not be a fraud upon the court, but redress should be left to a motion under 60(b)(3) or to the independent action.

19

Id., citing 7 Moore's Federal Practice § 60.33 at 515 (1971).  The Fourth Circuit determined that the fabricated evidence and perjury perpetrated by Great Coastal did not reach the level required to constitute fraud on the court.

> Perjury and fabricated evidence are evils that can and should be exposed at trial, and the legal system encourages and expects litigants to root them out as early as possible. . . .  Fraud on the court is therefore limited to the more egregious forms of subversion of the legal process already suggested, those that we cannot necessarily expect to be exposed by the normal adversary process. . . . We therefore conclude that the company's actions, however reprehensible, are not tantamount to fraud on the court.

Id. at 1357.

In Cleveland Demolition Co., Inc. v. Azcon Scrap Corp., 827 F.2d 984 (4th Cir. 1987), the Fourth Circuit considered the issue of whether the involvement of an attorney in perjured testimony amounted to fraud on the court. Quoting Great Coastal for the proposition that "[i]nvolvement of an attorney, as an officer of the court, in a scheme to suborn perjury would certainly be considered fraud on the court," 675 F. 2d at 1357, the court in Cleveland Demolition was faced with the question whether a jury verdict should be set aside based on a claim that fraud on the court was committed when a witness (Richard Spine) testified falsely about whether he had requested a Dun & Bradstreet report prior to entering into a contract and trial counsel (Lawrence Demase) had prepared affidavits and questioned witnesses at trial. The Fourth Circuit in Cleveland Demolition recognized that the participation of an attorney, as an officer of the court, in the fraud was important, noting "[a] verdict may be set aside for fraud on the court if an attorney and a witness conspired to

20

present perjured testimony." 827 F.2d at 987. Nonetheless, the Fourth Circuit declined to set

aside the jury verdict based on fraud on the court.

> In essence, Cleveland asks this court to vacate the earlier verdict
> because Spine's testimony conflicts with the Dun & Bradstreet
> statements and Demase participated in the trial. Not only does
> this argument fail to establish any evidence of a fraud on the
> court, but it seriously undermines the principle of finality. If a
> routine evidentiary dispute, which occurs in virtually all trials,
> could justify an action for fraud on the court, then any losing
> party could bring an independent action to set aside the verdict,
> forcing extended proceedings in almost every case. Because
> Rule 60(b) imposes no time limit on these independent actions,
> they could be brought at any time. Thus, under Cleveland's
> version of the doctrine, no verdict would ever be final until a
> second proceeding was held to determine whether there was a
> fraud on the court.

Id.

In re Genesis Data Technologies, Inc., 204 F. 3d 124 (4th Cir. 2000), concerned

whether the filing of a false affidavit could constitute fraud on the court. The Fourth Circuit

reiterated that while a false affidavit from a party does not constitute fraud on the court,

"fraud perpetuated by an officer of the court, including an attorney, constitutes fraud upon

the court under well-settled federal law." Id. at 131.

Asterbadi v. Leitess, 176 F. App'x 426 (4th Cir. 2006), concerned whether a lawyer

engaged in fraud on the court by failing to inform the court in a motion for default judgment

that an aircraft, the guaranty for the sale of which was the subject of the lawsuit, had been

sold.  Quoting Great Coastal, the Fourth Circuit stated:

> The doctrine of fraud on the court is a principle to be narrowly
> construed and applied, and it embraces "only that species of
> fraud which does or attempts to, defile the court itself, or is a
> fraud perpetrated by officers of the court *so that the judicial
> machinery can not perform in the usual manner* its impartial task of

adjudging cases that are presented for adjudication," such as a lawyer's subordination of perjury. A party asserting fraud on the court must establish that the conduct complained of was part of "a deliberate scheme to directly subvert the judicial process."

Id. at 430 (internal citation from Great Coastal omitted). The Fourth Circuit concluded that the failure to advise the court of the sale of the aircraft, when considered in light of defendants' subsequent actions in entering into a forbearance agreement and filing a notice of partial satisfaction, "simply does not constitute the egregious conduct essential to a fraud on the court. Moreover, the Defendants' actions cannot be seen as hindering the court's ability to perform its impartial adjudicatory function." Id.

The Fourth Circuit again considered the issue of fraud on the court in Fox ex rel. Fox v. Elk Run Coal Co., Inc., 739 F.3d 131 (4th Cir. 2014). The issue arose in a dispute over Fox's entitlement to black lung benefits. Fox's employer, Elk Run Coal Company, obtained reports from two pathologists diagnosing Fox with complicated pneumoconiosis, but did not submit these reports to the ALJ conducting an evidentiary hearing on Elk Run's appeal of the agency director's decision to award benefits. Rather, Elk Run submitted a report from another pathologist who did not diagnose pneumoconiosis. Based on this evidence, the ALJ found that Fox failed to show he had pneumoconiosis and denied benefits. Several years later, Fox filed a new claim, and the previously undisclosed pathology reports came to light. The ALJ found that Elk Run's prior failure to disclose the reports was fraud on the court and awarded benefits dating back to his original claim. Upon review, the Benefits Review Board "found that Elk Run's conduct was not sufficiently egregious to meet the high bar for a claim of fraud on the court because it did not amount to an intentional design aimed at

22

undermining the integrity of the adjudicative process under the BLBA [Black Lung Benefits Act]." Id. at 133.

The Fourth Circuit affirmed the decision of the Benefits Review Board that Elk Run's conduct did not amount to fraud on the court, concluding that "[w]e bestow no blessing and place no imprimatur on the company's conduct, other than to hold that it did not, under a clear chain of precedent, amount to a fraud on the court." Id. at 139. The Fourth Circuit began its analysis by noting that "[f]raud on the court is not your 'garden-variety fraud,'" and that Rule 60(b)(3) provides relief for fraud or misrepresentation, subject to a one year time limit set forth in Rule 60(c)(1). The Fourth Circuit explained that "this one year limit balances the competing interests of relieving an aggrieved party from the hardships of an unjustly procured decision against the deep '[r]espect for the finality of judgments . . . engrained in our legal system.'" Id. at 135 (quoting Great Coastal, 675 F. 2d at 1354-55). The Fourth Circuit distinguished ordinary fraud under Rule 60(b)(3) subject to the one year time limitation in Rule 60(c)(1) from fraud on the court under Rule 60(d)(3) by noting that "not only must fraud on the court involve an intentional plot to deceive the judiciary, but it must touch on the public interest in a way that fraud between individual parties generally does not." Id. at 136. The Fourth Circuit noted the "constricted scope" and "circumscribed understanding" of fraud on the court, id., concluding that Elk Run's failure to disclose the pathology reports diagnosing pneumoconiosis was not fraud on the court.

> Conduct that is not exemplary need not undermine the "integrity of the court and its ability to function impartially" within the meaning of "fraud on the court." The adversary process exists because it permits each side to present its own case as well as to test its opponent's in order to expose vulnerabilities of every sort and variety. It is, to some extent, a

> self-policing mechanism. . . . Thus it falls to each party to shape and refine its case, subject of course to the risk that its adversary will discredit it. . . . A party relying on weak evidence to sustain its case runs the risk that its experts will crumble upon cross-examination or otherwise be impeached by the opposing party. The presence of that deterrent means, however, that routine evidentiary disputes as this cannot clear the high bar for an action for fraud on the court.

Id. at 137.

The Fourth Circuit has held that a petitioner must also establish that the fraud was material to the disposition of the proceedings he or she wants reopened in order to be entitled to relief. United States v. MacDonald, No. 97-7297, 1998 WL 637184, at *2 (4th Cir. Sept. 8, 1998). To prevail on a Rule 60(d) motion, the petitioner must prove fraud on the court by "clear and convincing evidence." Id. (citing Square Const. Co. v. Wash. Metro Area Transit Auth., 657 F.2d 68, 71 (4th Cir. 1981).

The Court of Federal Claims recently surveyed the law concerning fraud on the court, and citing both Great Coastal and Fox v. Elk Run. Hazlehurst v. Sec'y of HHS, 177 Fed. Cl. 479, 497 (2025), summarized as follows:

> In sum, misrepresented or suppressed evidence usually does not amount to a fraud on the court. When it does, the misconduct must so defile the judicial process that it calls into question the legitimacy of the court's decision itself, meaning that the alleged misconduct must have fundamentally altered the outcome or impaired the affected party's ability to fairly present its case.

Following Great Coastal and Fox v. Elk Run, district courts in the Fourth Circuit have been hesitant to find fraud on the court. See United States v. Crosby, No. 4:96-361, 2014 WL 12923724, at *2 (D.S.C. April 14, 2014)(Concluding that defendant's Rule 60(d)(3) motion "is, in reality, a successive motion for relief under 28 U.S.C. § 2255."); Liggins v.

24

Clarke Cnty. Sch. Bd., No. 5:09cv0077, 2014 WL 6460776, at * 5 (W.D.Va. Nov. 17, 2024) ("Liggins has failed to prove that any alleged misconduct affected the outcome of his case."); Trawick v. Med. Univ. of S.C., No. 2:16cv730, 2016 WL 8650132, at * 6 (D.S.C. June 28, 2016) ("Fraud on the court requires that there as a material subversion of the legal process such as could not have been exposed within the one-year window; it requires rigorous proof, as do other challenges to a final judgment, lest the finality established by Rule 60(b) be overwhelmed by continuing attacks on the judgment."); Melvin v. United States, No. 5:16cv73, 2018 WL 3762986 (E.D.N.C. Aug. 8, 2018)("Plaintiff's allegations that the government provided false information to the court in its filings, particularly in filings supporting its motion for summary judgment, concern standard evidentiary disputes, and as such provide no basis for relief."); Vaeth v. Mayor and City Council of Baltimore City, No. ELH-18-1600, 2019 WL 2272669, at *3 (D. Md. May 24, 2019)(Fraud on the court "is a nebulous concept that is construed very narrowly. . . . [T]his doctrine should be invoked only when parties attempt the more egregious forms of subversion of the legal process . . . those we cannot necessarily expect to be exposed by the normal adversary process."); Addison v. Amica Mut. Ins. Co., No. 5:18cv03158, 2020 WL 321461, at *4 (D.S.C. Sept. 4, 2020)(High bar of Rule 60(d)(3) not met where "[p]laintiff's assertions at most suggest that Defense Counsel made an argument of policy interpretation and did not cite [a South Carolina Supreme Court decision] in its submissions to the court."); Mattison v. Willis, No. 4:21cv87, 2022 WL 995388, at *4 (E.D.Va. April 1, 2022)("[A]ssertions of 'fraud on the court' under Federal Rule 60(d)(3) cannot be based on 'speculation and conclusory allegations, unsupported by facts.'"); Watson v. Daniels, No. 1:19cv249, 2022 WL 22270687, at *5

25

(M.D.N.C. Oct. 6, 2022)("[A] finding of fraud on the court is reserved for material, intentional misrepresentations that could have not been discovered earlier, even through due diligence. . . . [T]he alleged fraud must go beyond mere discrepancies in the record evidence available at the time judgment was entered."); United States v. Oudeh, No. 5:18cv9D, 2023 WL 3079369, at * 3 (E.D.N.C. April 25, 2023)("Defendants must prove the misconduct complained of by clear and convincing evidence."); Thomas v. S.C. Dep't. of Mental Health, No. 3:20-1333-MGL, 2023 WL 7553061, at *1 (D.S.C. Oct. 18, 2023)("[F[raud on the court involves corruption of the judicial process itself and thus the doctrine cannot support allegations involving a routine evidentiary conflict.").

The district court opinion in United States v. Higgs, 193 F. Supp. 3d 495 (D. Md. 2016), is instructive as it arises in the context of a § 2255 petition. As does Patel, the defendant in Higgs claimed that the government committed fraud on the court during § 2255 proceedings following his conviction for capital murder. Similar to Patel's § 2255 claims, Higgs claimed the government failed to turn over discovery material. In Higgs, the alleged discovery failure concerned the nondisclosure of the involvement of a critical government trial witness, Victor Gloria, in the subsequent Baltimore murder of Martrelle Creighton. In its opposition to the § 2255 motion, the government "described Higgs's claims as 'speculation about the Government's knowledge or actions,' arguing that 'vague descriptions of the supposed benefits conferred on Gloria largely fail to demonstrate any connection to this trial and federal officials." Id. at 498. "In response to Higgs's discovery request, the Government said 'there is no evidence that [Gloria] was promised anything other than that which he admitted at trial.'" Id. The district court denied the § 2255 motion,

26

concluding that "pure speculation about supposed benefits cannot substitute for hard facts. . . . Higgs, quite simply, has failed to demonstrate any causal connection between Gloria's testimony in this federal case and whatever treatment he may have received in the state jurisdictions." Id. at 499.  Higgs's defense counsel continued to investigate Gloria's potential involvement in the Creighton murder and two years later filed a Rule 60(d)(3) motion to set aside the denial of his § 2255 petition based on fraud on the court. "Specifically, Higgs alleges the Government committed fraud on the court by denying that federal officials knew about or had any influence with respect to benefits supposedly conferred on Gloria by local authorities in Baltimore." Id. at 506. Much as Patel does here, "Higgs argues that the Government's alleged misrepresentations 'induced the Court to rule that Higgs's constitutional claim failed,' and that it is 'difficult to envision the Court making such rulings had it been presented with the arguments and evidence contained in this motion during the pendency of the § 2255.'" Id. at 506. The district court disagreed, concluding as follows:

> [T]he Court finds that Higgs has failed to prove by clear and convincing evidence, first that the Government in any sense committed fraud on the court by denying that Gloria received consideration from Baltimore city prosecutors in the Creighton murder case; and second, that the Government engaged in an intentional plot to deceive the Court during § 2255 proceedings; and third, even assuming the factual accuracy of Higgs's allegations, he has failed to establish that evidence of benefits to Gloria beyond those already disclosed to the defense would have made a material difference to the outcome of the § 2255 proceedings.

Id. at 508.  The district court's analysis of the Rule 60(d)(3) challenge in Higgs provides a helpful framework within which to assess Patel's similar allegations of fraud on the court

27

stemming from the government's opposition to a § 2255 petition based on alleged <u>Brady</u> violations.[14]

**V.**

Considered in the light of the legal standard for claims of fraud on the court, Patel's allegations do not measure up. There are several reasons why Patel's allegations do not constitute fraud on the court.

First, many of the assertions with which Patel takes issue are not misrepresentations of fact upon which a fraud claim may be based.  For example, Patel claims that the government's response to the Hopwood represents fraud on the court because the government disputed that Patel raised new facts and that his allegations did not support his claim or relate to his case.  The government's disagreement with Patel's interpretation of the 2017 information, including the Brandon testimony, New York Times article, Lesnak deposition testimony, and the 2017 OIG Investigative Summary, does not constitute "corruption of the judicial process itself," <u>Cleveland Demolition</u>, 827 F. 2d 986, "in which the integrity of the court and its ability to function is directly impinged," <u>Great Coastal</u>, 675 F. 2d at 1356.  Nor could the statements made by the government in response to the Hopwood letter be in any sense material, as following the government's response, the court allowed Patel to amend his § 2255 petition. Rather, the government's responses to the Hopwood letter are more in the nature of discrepancies in the record evidence or "routine evidentiary disputes," <u>Fox v. Elk Run</u>, 739 F.3d at 137, subject to being "exposed by the

---

[14] The district court in <u>Higgs</u> followed this decision with a memorandum opinion denying a certificate of appealability. <u>United States v. Higgs</u>, Nos. PJM-98-0520, PJM-05-3180, 2016 WL 6879939 (D. Md. Nov. 22, 2016). The Fourth Circuit denied a certificate of appealability and dismissed the appeal. <u>United States v. Higgs</u>, No. 16-15, 2017 WL 11684107 (4th Cir. Feb. 23, 2017), <u>cert.</u> <u>denied</u>, 138 S.Ct. 2572 (2018).

normal adversary process," <u>Great Coastal</u>, 675 F.2d at 1357, which Patel had the opportunity to address in his amended § 2255 Petition and subsequent briefing.

This failing applies as well to many of the statements made by the government in its Motion to Dismiss Patel's Amended § 2255 Petition. There the government characterized Patel's claims that his investigation was the Operation Alpha referenced in 2013 OIG Report and that the information in the 2017 OIG Investigative Summary concerned an ATF agent and attorney in the Western District of Virginia involved in his case were "purely speculative," "factually baseless," "bold, baseless allegations," "speculative and unfounded," and "unfounded." Gov't Mot. to Dismiss Amended § 2255 Petition, ECF No. 913, at 8, 9, 10, 12, 15. Simply asserting that Patel's allegations were baseless and speculative does not constitute fraud on the court. Patel filed a response to the government's motion to dismiss and took issue with the government's characterizations of his claims. The government's assertion in its motion to dismiss that Patel's new allegations were baseless and speculative are just the sort of assertions that can be "expect[ed] to be exposed to the normal adversary process," <u>Fox v. Elk Run</u>, 739 F. 3d at 131, and do not come close to the subversion of the legal process necessary to make out a claim of fraud on the court. And in his opposition to the government's motion to dismiss, Patel did just that, asserting that his claims were sufficiently pled to survive the government's motion to dismiss. <u>See</u> Resp. to Govt's Mot. to Dismiss Patel's Amended 28 U.S.C. § 2255, ECF No. 916.

Second, Patel has not shown that he will be able to prove by clear and convincing evidence that the government's statements regarding Agent Lesnak's testimony, Acting Director Brandon's testimony, Operation Alpha, Big South Tobacco Warehouse, and the

29

2017 OIG Investigative Summary contained false statements of fact. Again, most of the government's statements reflect its position regarding the sufficiency of Patel's allegations, rather than affirmative statements of fact. Nevertheless, the court will examine each of the statements Patel claims is fraudulent.

1. Agent Lesnak's Testimony.

Patel alleges that the government's statement that "Lesnak was not part of an unauthorized operation," and that "Lesnak's substantive testimony relates to the 2013 OIG report," citing to specific pages of Lesnak's deposition testimony. Gov't Mot. to Dismiss Amended § 2255 Petition, ECF No. 913, at 14. The court has read Agent Lesnak's deposition in its entirety, and nowhere in Agent Lesnak's deposition does he suggest that his undercover operations were unauthorized. To the contrary, Agent Lesnak repeatedly testified that his operations were approved by ATF and DOJ officials. Some examples include:

- "In this case it was a tobacco task force. And you apply to the Department of Justice. The Deputy Attorney General at that time in 2006 personally signed off on our churning activity." Lesnak Dep., ECF No. 913-2, at 34.

- "There were – there was authority from main Justice – there were two memos, okay, churning memos. That's a very strict process that goes up through our headquarters through the ATF and maybe even the deputy director and he's the one who hand carries it over to main Justice." Id. at 42.

- "You always had to obtain approval. I believe the new approvals required links to terrorism, organized crime, or massive tax fraud." Id. at 55.

- "At the highest levels of our government from – many different agencies were well aware of what we were doing and how we were doing it." Id. at 284.

- "We knew we were the authorized operation. Hell, I had the letter from the Department of Justice. We knew everything we did was approved at the headquarters level." Id. at 352.

- "Q And I'm sure you've answered this before but just to be clear, the transactions involving Target A and products of Target A were undertaken in connection with an authorized federal investigation, correct?
  A By many agencies at the highest levels of the Department of Justice and what's often lost, and I had to remind my ATF headquarters about this, we did con—closed -door congressional briefings on this case, and I sat back for the first two years of this saying, how the hell can anybody say this was unauthorized?" Id. at 356.

Moreover, the Fourth Circuit issued a published decision on August 3, 2018, well before the Amended § 2255 Petition and the government's motion to dismiss were filed, in which the court refers to Agent Lesnak's operations. See U.S. Tobacco Cooperative, Inc. v. Big South Wholesale of Virginia, LLC, 899 F.3d 236, 243  (2018). In that decision, the Fourth Circuit discusses in detail the ATF's undercover operation with Jason Carpenter and Christopher Small and the testimony of their "primary ATF handler," Agent Lesnak. Patel's assertion that the government's statement that "Lesnak was not part of an unauthorized operation" is fraudulent is directly contradicted by the Fourth Circuit's opinion, citing to a joint appendix reference that "The ATF churning operations utilizing Carpenter and Small were duly authorized and closely monitored by case agents and ATF Headquarters. Additionally, these same investigations have been audited several times by ATF and the Department of Justice Office of the Inspector General." 899 F.3d at 243. Additionally, on remand, in U.S. Tobacco Cooperative, Inc. v. Big South Wholesale of Virginia, LLC,  365 F. Supp. 3d 604 (E.D.N.C. 2019), the district court concluded that "[t]here is no evidence that Special Agent Lesnak acted outside the scope of his authority as a sworn ATF Agent," id. at 617, and that "plaintiffs have not proffered evidence that Special Agent Lesnak was acting

outside of his authority during his dealings with Carpenter, Small, and Daniel." Id. at 620. The district court's opinion was docketed on February 19, 2019, one month before the government filed its motion to dismiss Patel's Amended § 2255 Petition. Given Agent Lesnak's repeated testimony that his operations were authorized and the consistent conclusion to that effect by both the Fourth Circuit and the Eastern District of North Carolina, Patel's assertion that the government engaged in fraud on the court by stating that "Lesnak was not part of an unauthorized operation" falls flat.

Second, the court's review of Agent Lesnak's deposition confirms that Patel's investigation is not mentioned at all. As such, the Lesnak deposition provides no basis to suggest that Patel's § 2255 Petition was timely filed in 2017. And in fact, consistent with the government's statement in its motion to dismiss brief, Agent Lesnak was questioned at his deposition about the 2013 OIG Report. See, e.g., Lesnak Dep. at 99-100.

In sum, as the court concluded in 2019, nothing in the Lesnak deposition provides any basis to resuscitate Patel's untimely § 2255 petition, nor do any of the statements made by the government in its briefing concerning Agent Lesnak's deposition come anywhere close to fraud on the court.

2.  Acting Director Brandon's Testimony.

On page 13 of its Motion to Dismiss Patel's Amended § 2255 Petition, the government states that "Brandon's testimony does not appear to contain any references to the investigation of Patels' criminal conduct." Gov't Mot. to Dismiss Amended § 2255 Petition, ECF No. 913, at 13. The court has read Acting Director Brandon's March 9, 2017, Congressional testimony, and Patel's investigation is nowhere mentioned in either Brandon's

written statement or testimony. As such, Acting Director Brandon's testimony does not support Patel's assertion of fraud on the court nor bolster his argument that something about Brandon's testimony renders Patel's 2017 habeas petition timely filed.

3.  Operation Alpha.

The government asserts in its motion to dismiss Patel's Amended § 2255 Petition that Patel's claim that his investigation was referenced in the 2013 OIG Report as Operation Alpha as being "factually baseless" and "purely speculative."   ECF No. 913, at 8-9. The government's motion to dismiss also points out that Patel's contention that the amount of money involved in Operation Alpha ($14.9 million) tracks his indictment was wrong as Patel's indictment alleged the involvement of $20.9 million in untaxed cigarettes. Id. at 9 n.5. In fact, Patel's indictment alleged that "defendants have paid law enforcement officers approximately $20,924,498.56 for the untaxed cigarettes." Indictment, ECF No. 3, ¶ 28. Without more, the government's assertion in its motion to dismiss that Patel's claim that his investigation was Operation Alpha lacked a factual basis is not fraud on the court. In any event, it is difficult to see how Patel's contention that Operation Alpha referenced in the 2013 OIG Report was his investigation helps his argument that his § 2255 Petition, filed more than three years after the 2013 OIG Report became public, was timely filed.

4.  Big South Tobacco Warehouse.

On page 8 of the government's motion to dismiss, the government asserts that "Patel makes no mention of alleged ATF misuse of a management account at the Big South warehouse in Bristol, Virginia," and that "Patel never draws any factual connection between the investigation into Patel's criminal conduct and the civil suit that involved the Big South

tobacco warehouse." Gov't Mot. to Dismiss Amended § 2255 Petition, ECF No. 913, at 8. Here, the government makes no independent assertions of fact. Rather, the government points out that Patel's amended petition does not mention the Big South warehouse. The court has reviewed Patel's Amended § 2255 Petition and discerned no reference to the Big South warehouse. As such, the government's statement is not false, much less fraudulent. In any event, the government's argument in its motion to dismiss brief that Patel's Amended § 2255 Petition draws no link between his investigation and the Big South warehouse is one that is subject to the normal adversary process, and not fraud on the court.

     5.  2017 OIG Investigative Summary.

On pages 14 and 15 of its motion to dismiss, the government states that "there is nothing in the summary to suggest that it relates in any way to the Patel investigation," and that Patel's allegations are speculative. Gov't Mot. to Dismiss Amended § 2255 Petition, ECF No. 913, at 14-15. Again, this is an argument subject to the normal adversary process, which "permits each side to present its own case as well as to test its opponent's in order to expose vulnerabilities of every sort and variety." Fox v. Elk Run, 739 F. 3d at 137. It is nowhere near the level of corruption and improper influence required to make out a claim of fraud on the court "in which the integrity of the court and its ability to function impartially is directly impinged." Great Coastal, 675 F.2d at 1356.

Third, and finally, Patel cannot establish that any of the government's alleged misstatements were material to the court's decision to deny the Amended § 2255 Petition. As the court noted in the conclusion of its 2019 memorandum opinion denying Patel's Amended § 2255 Petition, "[i]n sum, while Patel had a credible claim that the 2013 OIG

Report and the underlying investigation should have been subject to <u>Brady</u> disclosure during his prosecution and before he entered his guilty plea and was sentenced, he waited too long to bring it. Nothing about the 2017 materials referenced in his amended petition gives rise to a <u>Brady</u> claim that is not already time barred." Mem. Op., ECF No. 918, at 10. On September 25, 2013, six weeks after Patel was sentenced, the Washington Post reported on the 2013 OIG Report. Patel's § 2255 Petition, filed more than three years later on March 30, 2017, was untimely. The court has scoured the 2017 materials relied upon by Patel to see whether they support his assertion that these materials, rather than the 2013 OIG Report, provided the trigger for filing his § 2255 petition. They do not. Moreover, as Patel's assertions of fraud on the court lack substantive basis, they do not provide Patel a basis for reopening his time barred habeas claim.

## VI.

Plainly, Patel's claim of fraud on the court falls far short of the exacting standard required for a Rule 60(d)(3) claim. Nor is a Rule 60(b)(3) claim timely, as Rule 60(c)(1) requires that it be filed within one year, and Patel's December 2024 motion was filed long past that deadline. Finally, to the extent Patel's December 2024 motion is construed as a new § 2255 petition, it is a second or successive one and cannot proceed without certification from the Fourth Circuit, which has not been obtained. <u>See</u> 28 U.S.C. § 2255(h).

Accordingly, the court will **GRANT** the government's renewed motion to dismiss Patel's Rule 60(d)(3) motion. ECF No. 1005. Patel's Motion for Relief Under Rule 60(d)(3), ECF No. 989, is **DENIED**.

An appropriate Order will be entered this day.

Entered: April 27, 2026

Mike Urbanski
Senior U.S. District Judge
2026.04.27 16:10:43 -04'00'

Michael F. Urbanski
Senior United States District Judge

36